**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

AURELIO DURAN GONZALES; MARIA
C. ESTRADA; MARIA LUISA
MARTINEZ DE MUNGUIA; IRMA
PALACIOS DE BANUELOS; LUCIA
MUNIZ DE ANDRADE; KARINA NORIS;
ADRIANA POUPARINA,
            *Plaintiffs-Appellees,*

            v.

DEPARTMENT OF HOMELAND
SECURITY; MICHAEL CHERTOFF,
Secretary of the Department of
Homeland Security,
            *Defendants-Appellants.*

No. 07-35021

D.C. No.
CV-06-01411-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
August 6, 2007—Seattle, Washington

Filed November 30, 2007

Before: William C. Canby, Jr., Cynthia Holcomb Hall, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

15411

## COUNSEL

Peter D. Keisler (on the briefs); Thomas H. Dupree, Jr. (on the briefs and argued); David Kline (on the briefs); Papu Sandhu (on the briefs), United States Department of Justice, Office of Immigration Litigation, Washington, DC, for the defendant-appellants.

Matt Adams (on the briefs and argued), Northwest Immigrant Rights Project, Seattle, Washington; Trina Realmuto & Beth Werlin (on the briefs), American Immigration Law Foundation, Washington, DC; Marc Van Der Hout & Stacy Tolshin, Van Der Hout, Brigagliano & Nightingale, San Francisco, California, for the plaintiffs-appellees.

---

**OPINION**

CALLAHAN, Circuit Judge:

On December 19, 2006, the District Court for the Western District of Washington entered an order granting preliminary injunctive relief to a class of aliens, enjoining defendants Department of Homeland Security and Secretary Michael Chertoff (collectively "DHS") from denying certain applications for permission to reapply for admission into the United States, or from acting on any denied applications. We vacate the order and remand because we defer to the decision by the Board of Immigration Appeals (BIA) in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), which is dispositive of plaintiffs' request for injunctive relief.

**I**

In 1994, Congress amended the Immigration and Nationality Act (INA), providing for adjustment of status for certain aliens otherwise ineligible for such relief because of their unlawful status in the United States. Pub. L. No. 103-317, Title V § 506(b), 108 Stat. 1724, 1765-66 (1994) (the special adjustment provision). The special adjustment provision excepted these aliens from certain admissibility requirements for adjustment of status. *See* 8 U.S.C. § 1255(a). It allowed the Attorney General to adjust the status of an alien who had entered the United States without inspection to that of a legal permanent resident provided that the alien (1) was admissible

to the United States and the beneficiary of an immediately available immigrant visa, and (2) paid an application fee five times the usual fee. Pub. L. No. 103-317, § 506(b), 108 Stat. 1724, 1766 (1994). The 1994 law was effective for three years, from October 1, 1994, until October 1, 1997. *Id.*

In 1998, Congress extended the availability of the special adjustment provision to aliens who were the beneficiaries of an alien relative petition filed on or before January 14, 1998. Pub. L. No. 105-119, § 111, 11 Stat. 2440 (1997). Finally, in 2000 Congress revived the special adjustment provision to include beneficiaries of an alien relative petition filed on or before April 30, 2001. LIFE Act Amendment of 2000, Pub. L. No. 106-554, § 1502(a), 114 Stat. 2763 (2000). The 2000 provision required that the beneficiary of an alien relative petition filed after January 14, 1998, be physically present in the United States on December 20, 2000. *Id.* The special adjustment provision is codified at 8 U.S.C. § 1255(i).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), effecting large scale changes to the INA. Pub. L. No. 104-208, div. C, 110 Stat. 3009 (1996). In addition to the special adjustment provision, two IIRIRA provisions pertaining to aliens who reenter the United States after being previously removed or deported are relevant here—8 U.S.C. §§ 1231(a)(5) (the reinstatement provision), and 1182(a)(9)(C)(i)(II) (the inadmissibility provision for previously removed aliens unlawfully present in the United States).[1]

Section 1231(a)(5) provides for automatic reinstatement of an alien's prior removal or deportation order when an alien has reentered the United States illegally. It also states that "the alien is not eligible and may not apply for any relief"

---

[1]IIRIRA also eliminated deportation and exclusion proceedings, merging them into the broader category of removal proceedings. *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 854 n.6 (9th Cir. 2004).

from removal. Section 1182(a)(9)(C)(i)(II) deems permanently inadmissible a previously removed alien who reenters the United States unlawfully. An alien inadmissible under this section, however, may seek admission into the United States if: (1) he has been absent from the United States more than ten years, and (2) he has received the consent of the Secretary of Homeland Security to the application for readmission. 8 U.S.C. § 1182(a)(9)(C)(ii). Agency regulations provide that permission to reapply is sought by the filing of an I-212 Form. 8 C.F.R. § 212.2. A successful applicant receives an "I-212 waiver."

In August 2004, we held that a previously removed alien unlawfully present in the United States was eligible to adjust his status under the special adjustment provision provided that he filed an I-212 waiver application prior to the initiation of reinstatement proceedings, notwithstanding the bar to relief from removal contained in IIRIRA's reinstatement provision and inadmissibility provision for previously removed aliens unlawfully present in the United States. *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004). Relying on this authority, plaintiffs commenced the present action in the district court.

## II

The named plaintiffs in this case are seven Mexican citizens who have previously been deported or removed from the United States and have reentered without permission or detection. Each has applied for an I-212 waiver in conjunction with an application for adjustment of status under the special adjustment provision. The I-212 waiver application is pending in four of the cases and has been denied, along with the adjustment of status applications, in the remaining three cases.

On September 28, 2006, the named plaintiffs filed a complaint against DHS for injunctive and declaratory relief, a motion for a temporary restraining order and preliminary

injunction, and a motion for class certification. The complaint alleged that a class of persons "have been denied the opportunity to apply for lawful permanent resident (LPR) status as a result of Defendants' refusal to comply with the precedent decision of the Ninth Circuit in *Perez-Gonzalez v. Ashcroft*[.]" Plaintiffs demonstrated DHS's non-compliance by submitting a March 31, 2006, Interoffice Memorandum from the United States Citizenship and Immigration Service's (USCIS) Acting Associate Director for Operations and Acting Chief Counsel, entitled "Effects of *Perez-Gonzalez v. Ashcroft* on adjudication of Form I-212 applications filed by aliens who are subject to reinstated removal orders under INA § 241(a)(5)" (Interoffice Memorandum). The Interoffice Memorandum instructs USCIS officers to adjudicate I-212 waiver applications before instituting reinstatement proceedings in the Ninth Circuit only when the alien meets § 1182(a)(9)(C)(ii)'s provision requiring the lapse of ten years since the date of the alien's last departure from the United States.

On November 13, 2006, the district court issued an order granting the motions for injunctive relief and class certification, and on December 19, 2006, it issued an order amending the injunction.[2] The district court held that the Interoffice Memorandum conflicted with *Perez-Gonzalez* because *Perez-Gonzalez* "did not read the exception to the [INA] § 212(a)(9)(C) ban as limiting the waiver available under 8 C.F.R. § 212.2" to those who had remained outside the United States for more than ten years. It pointed out that Mr. Perez-Gonzalez himself "was inadmissible under INA § 212(a)(9)(C) and had not remained outside the country for more than ten years since his last departure." It granted the injunction because plaintiffs were likely to succeed on their claim, and the harm faced by plaintiffs—the loss of eligibility to apply for adjustment of status, including work authoriza-

---

[2]DHS does not appeal the district court's class certification. Thirty-one class members are known, but plaintiffs believe the class to consist of several hundred members.

tion, and potential reinstatement of removal orders—outweighed the government's administrative burden and its interest in deterring aliens from repeatedly entering the United States illegally.

The amended injunction enjoins DHS from "applying or enforcing the policy enumerated in Part 3(A) of the *Perez-Gonzales* [sic] Memo against any member of the class for the remainder of this action." It prevents DHS from "deny[ing] any class member's I-212 applications in the Ninth Circuit on the grounds that the applicant is inadmissible under INA § 212(a)(9)(C)(i)(II) and ten years have not elapsed since the applicant's last departure from the United States," (emphasis omitted) and from:

> giv[ing] any legal effect to any denied I-212 applications of class members if: (a) the applicant's I-212 application was adjudicated in a USCIS District Office located with the Ninth Circuit, (b) the application was denied between August 13, 2004 (the date *Perez-Gonzales* [sic] was filed) and the date of this Order, and (c) the application was denied on the grounds that the applicant was inadmissible under INA § 212(a)(9)(C)(i)(II) and ten years had not elapsed since the applicant's last departure from the United States.

DHS timely appeals. The district court stayed discovery and ordered that the injunction remain in effect pending appeal.

## III

We first review the district court's jurisdiction. We then examine whether the law supporting the district court's decision remains in effect in light of two post-*Perez-Gonzalez* decisions, *Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422

(2006), and *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006).

## A.   Standard of Review

The existence of subject matter jurisdiction is a question of law reviewed de novo. *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 984 n.7 (9th Cir. 2004). We also review de novo whether exhaustion is required in an immigration case. *Chang v. United States*, 327 F.3d 911, 919 (9th Cir. 2003).

We review the scope of injunctive relief for an abuse of discretion. *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 823 (9th Cir. 2002). Review is de novo when the district court's ruling rests solely on a premise of law and the facts are either established or undisputed. *Harris v. Board of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004).

## B.   Subject Matter Jurisdiction

**[1]** Before reaching the merits of this appeal, we must address the government's contention that the district court lacked jurisdiction to enter the injunction. Title 8 U.S.C. § 1252(f)(1) precludes jurisdiction over actions "to enjoin or restrain the operation of the provisions of part IV" of subchapter II of the INA, except as to "an individual alien against whom proceedings under such part have been initiated." Part IV, captioned "Inspection, Apprehension, Examination, Exclusion, and Removal," contains the reinstatement provision. Adjustment of status, however, falls under part V of subchapter II, and inadmissibility provisions are contained in part II.

DHS contends that § 1252(f)(1) barred the district court from issuing this injunction because the injunction prevents the department from giving "legal effect" to any denied I-212 application. DHS reasons that the "legal effect" of such a denial is the commencement of reinstatement proceedings

under § 1231(a)(5) and, by requiring aliens to bring individual proceedings to challenge provisions under part IV, § 1252(f) was intended to preclude courts from granting class-wide relief to enjoin the operation of the reinstatement provision. DHS cites to the legislative history behind § 1252(f), explaining that "a single district court or court of appeals does not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the United States." House Judiciary Committee Report No. 104-469(I) at 161.

Plaintiffs respond that the district court's order enjoins the unlawful application of § 1255(i)—the special adjustment provision—which falls under part V of subchapter II of the INA. They argue that application of the reinstatement provision is not a direct consequence of the denial of an I-212 waiver or an adjustment of status application, but rather it is one of several available recourses following the denial of an adjustment of status application.

**[2]** In support of their argument, plaintiffs cite to *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc). There, we held that § 1252(f)(1)'s limitation on injunctive relief did not apply to a district court order enjoining the Immigration and Naturalization Service enforcing an unlawful advance parole policy that prevented an alien from adjusting his status under a 1986 amnesty provision. *Id.* at 1149-50.[3] The law required that the alien reside in the United States continuously for a certain time period and provided that a "brief casual and innocent absence" from the country would not disrupt this continuity requirement. *Id.* at 1142. The INS required an alien to obtain advance parole, *i.e.*, advanced permission to reenter the United States, for any departure to be

---

[3]On March 1, 2003, the Immigration and Naturalization Service ceased to exist and its functions were transferred to the newly established Department of Homeland Security. *See* Homeland Security Act of 2002, 6 U.S.C. §§ 101, 111, 251, 252.

deemed "brief, casual and innocent." *Id.* As part of that class-action injunction, the district court enjoined the government from executing final orders of removal in cases where the aliens' adjustment of status applications had been rejected because of the unlawful advance parole policy. *Id.* at 1145. We held that § 1252(f)(1) was inapplicable because the injunction was issued under a statutory provision governing adjustment of status, which is located in part V of subchapter II of the INA. *Id.* at 1150.

**[3]** We conclude that *Catholic Social Services* is controlling. There, like this case, the district court enjoined the unlawful application of statutory provisions regarding adjustment of status. In both cases, removal was a collateral effect of the unlawful practice of denying adjustment of status. Section 1252(f)(1) does not prohibit the current injunction because, as in the *Catholic Social Services* injunction, it directly implicates the adjustment of status provision which falls under part V of subchapter II, notwithstanding that a reinstatement proceeding may be a collateral consequence of an unsuccessful adjustment application. Accordingly, the district court did not err by concluding that the injunction's effect on reinstatement proceedings "is one step removed from the relief sought by Plaintiffs and therefore does not bring this action within the INA § 242(f) bar."

**[4]** DHS also contends that the district court erred as a prudential matter by not requiring plaintiffs to exhaust administrative remedies.[4] Prudential exhaustion was not required. Prudential exhaustion comes into play where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of

---

[4]Under *Darby v. Cisneros*, 509 U.S. 137, 154 (1993), administrative exhaustion is required as a prerequisite to judicial review only "when expressly required by statute or . . . agency rule[.]" Because no statute or rule mandates administrative review of the denial of adjustment of status, statutory exhaustion was not required in this case.

the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1992) (internal quotations omitted). Here the agency has spoken clearly through the policy statement contained in the Interoffice Memorandum and its application of this policy in a number of cases. Moreover, the case presents a question of law that would not be aided by further development of the record.

## C.  *Fernandez-Vargas v. Ashcroft* **does not undermine** *Perez-Gonzalez*

Pursuant to *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002), we can overrule our existing precedent without en banc proceedings when intervening Supreme Court authority undermines our precedent, "and both cases are closely on point." DHS argues that the Supreme Court's *Fernandez-Vargas* decision undermines, and thus overrules, the threshold *Perez-Gonzalez* holding—that a successful I-212 waiver would act to prevent the reinstatement provision's bar to relief from removal.

In *Fernandez-Vargas*, the Supreme Court addressed whether IIRIRA's reinstatement provision applied to aliens who reentered the United States unlawfully prior to IIRIRA's effective date, April 1, 1997. 126 S. Ct. at 2425. Fernandez-Vargas, like plaintiffs in the case at bar, reentered the United States unlawfully after being previously deported.[5] Several

---

[5]In contrast to the plaintiffs at bar, however, Fernandez-Vargas was not deemed inadmissible under § 1182(a)(9)(C)(i)(II) but instead under § 1182(a)(9)(A)(i) (provision for previously removed arriving alien), presumably because he reentered the United States prior to IIRIRA's effective date. *See Fernandez-Vargas v. Ashcroft*, 394 F.3d 881, 883-884 (10th Cir. 2005); *INS Provides Interim Guidance On New Grounds Of Inadmissibility*, 74 No. 25 Interpreter Releases 1033, 1035 (July 7, 1997).

years later he filed an application to adjust his status to lawful permanent resident through his United States citizen wife. The application prompted the INS, in 2003, to reinstate his prior deportation order, thus preventing him from adjusting his status. *Id.* at 2427.

[5] Prior to the passage of IIRIRA, Fernandez-Vargas was eligible to apply for adjustment of status under the special adjustment provision. *Id.* He argued that the former law governed his case because his illegal reentry occurred prior to IIRIRA's effective date. *Id.* at 2428. He also contended that applying the new reinstatement provision to him would have an impermissibly retroactive effect. *Id.* The Supreme Court rejected both arguments. First, it held that the new reinstatement provision, on its face, reached aliens who reentered the United States pre-IIRIRA. *Id.* at 2428-30. It then held that the reinstatement provision had no retroactivity effect because it does not penalize an alien for his illegal reentry but rather "establishes a process to remove him" based on his "remaining in the country after [re]entry." *Id.* at 2432. Thus, "the statute applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country." *Id.*

DHS argues that had the Supreme Court agreed with *Perez-Gonzalez*, it would have required the agency to adjudicate Fernandez-Vargas's adjustment of status application. Thus, DHS contends that by implication *Fernandez-Vargas* undermines *Perez-Gonzalez* and requires us to disregard our holding that a successful I-212 waiver would avoid application of the reinstatement provision.

[6] DHS's argument fails because the Supreme Court in *Fernandez-Vargas* did not address the issues raised in *Perez-Gonzalez*. We have held that issues that are not raised or discussed are "unstated assumptions on non-litigated issues [and] are not precedential holdings binding further decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288

(9th Cir. 1985). The Supreme Court's holdings (1) that the reinstatement provision reaches aliens regardless of when they illegally reentered the United States, and (2) that the provision has no impermissible retroactive effect on aliens who reentered the United States prior to IIRIRA's effective date, do not address the holding in *Perez-Gonzalez* that a successful I-212 waiver, if filed prior to the initiation of reinstatement proceedings, can circumvent application of the reinstatement statute.[6] Accordingly, the district court did not err by concluding that *Fernandez-Vargas* does not undermine *Perez-Gonzalez*.

**D.** ***National Cable & Telecommunications Ass'n v. Brand X Internet Services* requires that we review *Perez-Gonzalez* in light of the BIA's opinion in *In re Torres-Garcia***

DHS also contends that the BIA's opinion in *In re Torres-Garcia* undermines the *Perez-Gonzalez* holdings pertaining to an illegal reentrant's admissibility and submits that the district court erred by failing to defer to *In re Torres-Garcia*. The question, then, is whether, under *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005) (*Brand X*), we must now defer to *In re Torres-Garcia*. If we determine that we are bound by *In re Torres-Garcia*, then the district court, in turn, will be bound by our decision.

In *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), the Supreme Court established a two-step inquiry for judicial review of an agency's construction of a statute. First, the reviewing court must determine whether the statute is unambiguous: "If the intent of Congress is clear, that is the end of the matter; for the court, as well as

---

[6]The Supreme Court had no reason to direct the agency to adjudicate Mr. Fernandez-Vargas's adjustment of status application because the issues presented to the Supreme Court were resolved by an affirmance of the Tenth Circuit's judgment.

the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. The Court explained that "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress has an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n.9. However, if the court determines that the statute is "silent or ambiguous," it then proceeds to the second *Chevron* step. *Id.* at 843. It does not impose its own construction of the statute, but rather it decides "whether the agency's answer is based on a permissible construction of the statute." *Id.*

**[7]** *Brand X* dealt with an agency's statutory interpretation that conflicted with a circuit court's earlier interpretation of a statute. The Supreme Court held that the circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided that the court's earlier precedent was an interpretation of a statutory ambiguity. *Brand X*, 545 U.S. at 980-82. The Court explained:

> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion. . . . Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.

*Id.* at 982-83.

**[8]** Accordingly, *Brand X* requires us to review our prior opinion in *Perez-Gonzalez* in light of the BIA's subsequent decision in *In re Torres-Garcia*. If we conclude that *Perez-Gonzalez* was based, at least in part, on ambiguity in the

applicable statutes, then pursuant to *Chevron* and *Brand X* we must give deference to the agency's resolution of these ambiguities in *In re Torres-Garcia*.[7]

### E.   Our holding in *Perez-Gonzalez v. Ashcroft*

In *Perez-Gonzalez*, we first addressed whether the reinstatement provision categorically barred a previously removed alien who unlawfully reentered the United States from obtaining adjustment of status under the special adjustment provision. We distinguished *Padilla v. Ashcroft*, 334 F.3d 921, 925 (9th Cir. 2003)—where we held that an alien who had unlawfully reentered the United States was barred by the reinstatement provision from adjusting his status under the special adjustment provision—on the grounds that Padilla had applied only for adjustment of status prior to the initiation of reinstatement proceedings, while Perez-Gonzalez had applied for adjustment of status *and* an I-212 waiver of inadmissibility before the initiation of his reinstatement proceedings. 379 F.3d at 788.

**[9]** *Perez-Gonzalez* held that a successful I-212 waiver "would offer a means of avoiding the reinstatement provision's bar." *Id.* at 788. We reasoned that by applying for the I-212 waiver before the initiation of reinstatement proceedings, Perez-Gonzalez was not yet subject to the reinstatement provision and therefore not barred from seeking adjustment of

---

[7]Although a three-judge panel is usually bound by the opinion of a prior three-judge panel, we have recognized an exception where "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority," such that the prior three-judge panel's decision has been "effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). This is such a situation. The Supreme Court's opinions in *Chevron* and *Brand X* together hold that to the extent that *Perez-Gonzalez* was grounded in the ambiguous language of the statute, the BIA's reasonable discretionary construction of the statute in *In re Torres-Garcia* has "effectively overruled" contrary holdings in *Perez-Gonzalez*.

status through the special adjustment provision. *Id.* We explained that "[h]ad the INS exercised its discretion [over Perez-Gonzalez's I-212 waiver request] in Perez-Gonzalez's favor, he would no longer be subject to the reinstatement provision as he would no longer be considered an illegal entrant." *Id.*[8]

We next held that the INS's denial of Perez-Gonzalez's I-212 application based on his failure to apply for the waiver from outside the United States was legal error because it was contrary to the agency's regulations, which provide (1) for the filing of an I-212 Form by an applicant for adjustment of status "with the district director having jurisdiction over the place where the alien resides," and (2) for the approved I-212 Form, filed in conjunction with an application for adjustment of status, to "be retroactive to the date on which the alien embarked or reembarked at a place outside the United States." *Id.* at 789 (citing 8 C.F.R. §§ 212.2(e), (g)(2), (i)(2)).[9]

---

[8]While DHS argued that this holding was undermined by *Fernandez-Vargas*, it acknowledged at oral argument that *In re Torres-Garcia* does not reach this issue.

[9]Subsection 212.2(e) reads:

Applicant for adjustment of status. An applicant for adjustment of status under section 245 of the Act and part 245 of this chapter must request permission to reapply for entry in conjunction with his or her application for adjustment of status. This request is made by filing an application for permission to reapply, Form I-212, with the district director having jurisdiction over the place where the alien resides. If the application under section 245 of the Act has been initiated, renewed, or is pending in a proceeding before an immigration judge, the district director must refer the Form I-212 to the immigration judge for adjudication.

Subsection (g)(2) reads:

If the applicant is physically present in the United States but is ineligible to apply for adjustment of status, he or she must file the application with the district director having jurisdiction over his or her place of residence.

We then determined that this legal error prejudiced Perez-Gonzalez because he was otherwise legally eligible for adjustment of status, and we accordingly remanded to the BIA for a determination of whether he was entitled to the I-212 waiver as a matter of discretion. *Id.* at 790-96. Importantly, we held that the I-212 waiver cured Mr. Perez-Gonzalez's inadmissibility under § 1182(a)(9)(C)(i)(II). *Id.* at 793-95. We relied on the text of the special adjustment provision allowing aliens who "entered the United States without inspection" to apply for adjustment of status, noting that nothing in that statute— passed in 1994 and extended in 1997 and 2000—nor in the discussion of the statute's purpose, limited the adjustment of status provision to aliens not subject to the reinstatement provision. *Id.* at 793. We also relied on 8 C.F.R. §§ 212.2(e) and (i)(2), concluding that these regulations "expressly permit applicants for adjustment of status who have been previously removed or deported to apply for permission to reapply from within this country." *Id.* We noted further that 8 C.F.R. § 245.1(c), which sets forth classes of aliens ineligible for adjustment of status, does not include previously deported or removed aliens. *Id.*

## F.  *Perez-Gonzalez* was based on a finding of statutory ambiguity

We conclude that, despite some language to the contrary, *Perez-Gonzalez* was based on a finding of statutory ambiguity that left room for agency discretion. *Chevron* deference is mentioned twice in *Perez-Gonzalez.* As part of the standard of review discussion, we wrote that *Chevron* deference was

---

Subsection (i)(2) reads:

> If the alien filed Form I-212 in conjunction with an application for adjustment of status under section 245 of the Act, the approval of Form I-212 shall be retroactive to the date on which the alien embarked or reembarked at a place outside the United States.

not applicable to our decision because the "normal principles of statutory construction suffice." *Perez-Gonzalez*, 379 F.3d at 786. Later in the opinion, when rejecting an agency guidance memorandum stating that aliens inadmissible under subsection (a)(9)(C) are disqualified from seeking adjustment of status, *Perez-Gonzalez* explained that the guidance memorandum was entitled to only "some deference," under *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), as opposed to "[r]egulations . . . [that] are a form of agency interpretation that is due *Chevron* deference." 379 F.3d at 793. When rejecting the guidance memorandum as inconsistent with the special adjustment provision and its implementing regulation 8 C.F.R. § 212.2, we commented that "[i]n the absence of a more complete agency elaboration of how its interpretation of [INA] § 212(a)(9) can be reconciled with its own regulations, we must defer to the regulations rather than to the informal guidance memorandum." *Id.* at 794 (citing *Christensen*, 529 U.S. at 587).

DHS argues that by the above statement, we did not rely on an unambiguous interpretation of the statute's inadmissibility provision. It urges that the reference to *Chevron* in the standard of review section is generalized and not supported by the text of the opinion in the specific context of the opinion's interpretation of Section 1182(a)(9)(C). In contrast, plaintiffs contend that *Brand X* does not apply because we decided *Perez-Gonzalez* under the first step of *Chevron*—by relying on the statutory terms of the special adjustment provision, buttressed by the agency's regulations.

Although *Perez-Gonzalez* relied on the special adjustment provision to hold that inadmissibility under subsection (a)(9)(C) was not a bar to adjustment of status, we clearly relied on the agency regulations to reconcile the inadmissibility provision with the special adjustment provision. *Id.* at 973. We could not rely on the plain language of the inadmissibility provision to reach our holding because subsection (a)(9)(C)(ii) provides for a waiver of this permanent inadmis-

sibility only by remaining outside the United States for ten years. Instead, we expressly deferred to the regulations, reasoning that (1) they were consistent with the special adjustment provision (not the inadmissibility provision), and (2) they would make no sense if read in conjunction with the guidance memorandum. *Id.* at 794.

**[10]** Thus, notwithstanding *Perez-Gonzalez*'s disclaimer of *Chevron* deference, careful review of the opinion shows that it is premised on the existence of ambiguity in the interplay between the inadmissibility and adjustment of status provisions. Accordingly, our decision did not "follow[ ] from the unambiguous terms of the statute and thus leave[ ] no room for agency discretion." *Brand X*, 545 U.S. at 982. We did not "foreclose[ ] the agency's interpretation" of the statutory scheme, *id.* at 983, but rather relied on the regulations to both reject an informal agency interpretation of the inadmissibility provision and reach our holding. *Perez-Gonzalez*, 379 F.3d at 794. Indeed, we noted that we were deferring to the regulations "[i]n the absence of a more complete agency elaboration of how its interpretation of [INA] § 212(a)(9) can be reconciled with its own regulations." *Id.* at 794.

**[11]** The issue in *Perez-Gonzalez* might have been resolved under the first step of *Chevron* by examining the text of the relevant statutes and their legislative histories. Indeed, this was the BIA's approach in *In re Torres-Garcia*, as well as the approach taken by the Tenth Circuit in *Berrum-Garcia*. *See infra* note 12. This approach was also adopted by a member of the *Perez-Gonzalez* panel who dissented from the denial of Mr. Perez-Gonzalez's petition for panel rehearing.[10] However,

---

[10]Judge Gould wrote that he would follow *Berrum-Garcia* "because there is no necessary conflict" between the reinstatement provision and the special adjustment provision. *Perez-Gonzalez v. Gonzales*, 403 F.3d 1116, 1117 (9th Cir. 2005) (order dissenting from the denial of panel rehearing).

   A straightforward application of these two provisions, which can
   rationally be read together without conflict, leads to the conclu-

by declining to adhere to the plain language of the inadmissibility provision and instead falling back on the regulations, *Perez-Gonzalez* did not find the inadmissibility provision, nor the statutory scheme, to be unambiguous. Accordingly, we are not bound by *Perez-Gonzalez* and must defer to *In re Torres-Garcia* if its interpretation of the governing statute is reasonable.

## G.    The BIA decision in *In re Torres-Garcia* interprets the applicable statutes

In *In re Torres-Garcia*, a case arising out of Dallas, Texas, the BIA addressed whether § 1182(a)(9)(C)(i)(II) barred a Mexican citizen who was unlawfully present in the United States after having been removed from adjusting his status under the special adjustment provision. 23 I. & N. Dec. at 869. Torres-Garcia received an I-212 waiver while in Mexico, granting his request for permission to reapply for admission. *Id.* at 867. Instead of reapplying for admission, however, Torres-Garcia reentered the United States without being admitted or paroled. *Id.* Subsequently, he filed an application for adjustment of status under the special adjustment provision which was denied because he was unlawfully present in the United States. *Id.* He was placed in removal proceedings where he renewed his adjustment of status application. *Id.* The immigration judge pretermitted his renewed application

---

sion that Perez-Gonzalez cannot qualify for adjustment of status under the plain language of § 245(i) because he is inadmissible under § 212(a)(9)(C). That Perez-Gonzalez applied for an I-212 waiver does not save him from § 212(a)(9)(C)'s bar to admissibility because he did not comply with § 212(a)(9)(C)(ii), which requires that such application be filed from outside the United States before reentry.

*Id.* at 1117-18. Judge Gould explained that the majority "erroneously treats 8 C.F.R. § 212.2 as an independent authority for I-212 waivers, separate from INA § 212 itself . . . when 8 C.F.R. § 212.2 is an agency regulation that implements INA § 212." *Id.* at 1118.

because Mr. Torres-Garcia's unlawful reentry into the United States rendered him inadmissible under § 1182(a)(9)(C)(i)(II). *Id.* Torres-Garcia argued that he was not inadmissible under subsection (a)(9)(C)(i)(II) because, like Perez-Gonzalez, he had applied for his I-212 waiver before the commencement of removal proceedings. *Id.* at 873. He maintained further that DHS's approval of the waiver insulated him against any allegation of inadmissibility arising from his subsequent unlawful reentry. *Id.* at 870.

The BIA rejected these arguments, explaining first that the I-212 waiver was limited to Torres-Garcia's inadmissibility under 8 U.S.C. § 1182(a)(9)(A)(ii), pertaining to aliens who had been removed after illegally entering or attempting to enter the United States.[11] *Id.* at 871-72. In other words, the I-212 waiver allowed him to apply for readmission without waiting the ten or twenty years otherwise required by subsection (a)(9)(A)(ii). The BIA explained that by reentering the United States without permission, Torres-Garcia became permanently inadmissible under subsection (a)(9)(C)(i)(II). *Id.* at 871. He was ineligible to seek an I-212 waiver at that point because he did not qualify for relief from permanent inadmissibility under subsection (a)(9)(C)(ii), which requires an alien to remain outside of the United States for ten years before requesting permission to reapply for admission. *Id.* at 873. Therefore, Torres-Garcia's successful waiver under subsection (a)(9)(A)(iii), obtained from outside the United States

---

[11]Subsection 1182(a)(9)(A)(i) deems an alien removed upon arrival inadmissible for five years. Subsection (a)(a)(9)(A)(ii) deems an alien who entered the United States and was removed inadmissible for ten years, or twenty years if the alien has been removed more than once or is an aggravated felon. Subsection (9)(A)(iii) provides for a waiver of inadmissibility for aliens falling under either subsection (a)(9)(A)(i) or (a)(9)(A)(ii) if, from outside of the United States, the alien receives the Attorney General's consent to reapply for admission. Unlike subsection (a)(9)(c)(ii), Subsection (a)(9)(A)(iii) does not place a time restriction on the ability to request permission to reapply for admission. We note that the procedures in subsection (a)(9)(A) are not the subject of this appeal.

before he reentered the country, had no effect on his subsequent inadmissibility under subsection (a)(9)(C)(i)(II)—as a previously removed alien unlawfully present in the United States. *Id.*

The BIA also rejected *Perez-Gonzalez* as support for Torres-Garcia's position:

> [W]e believe the Ninth Circuit's analysis regarding the availability of a retroactive waiver of the ground of inadmissibility set forth at [INA] section 212(a)(9)(C)(i) contradicts the language and purpose of the Act and appears to have proceeded from an understandable, but ultimately incorrect, assumption regarding the applicability of 8 C.F.R. § 212.2.

*Id.* at 873. The BIA explained that the regulation was promulgated to implement changes to the INA made in 1990 and did not reflect the statutory changes made to the INA in IIRIRA.[12] It reasoned:

---

[12]The 1990 amendments to the INA created a new § 1182(a)(6), which provided that a previously removed alien "who seeks admission within 5 years of the date of such deportation or removal (or within 20 years in the case of an alien convicted of an aggravated felony) is excludable, unless before the date of the alien's embarkment or reembarkment at a place outside the United States . . . the Attorney General has consented to the alien's applying or reapplying for admission." Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990).

In 1996 IIRIRA amended § 1182(a)(6) to its present form. It now reads: "An alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). No waiver of inadmissibility is provided under subsection (a)(6)(A). However, IIRIRA also created new subsection 1182(a)(9), classifying as inadmissible three types of previously removed aliens: (A) Certain aliens previously removed; (B) Aliens unlawfully present; and (C) Aliens unlawfully present after previous immigration violations, with corresponding waivers. *See supra* note 10, (detailing the terms of inadmissibility under subsection (a)(9)(A)).

> [W]hile 8 C.F.R. §§ 212.2(e) and (i)(2) authorize aliens who are unlawfully present in the United States to seek permission to reapply for admission retroactively in conjunction with an application for an adjustment of status, the very concept of retroactive permission to reapply for admission, i.e., permission requested after unlawful reentry, contradicts the clear language of section 212(a)(9)(C), which in its own right makes unlawful reentry after removal a ground of inadmissibility that can only be waived after the passage of 10 years.

*Id.* at 874-75 (citing *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1167 (10th Cir. 2004)).[13]

---

[13]*Berrum-Garcia* addressed the identical issue presented in *Perez-Gonzalez*—whether an alien subject to inadmissibility under subsection (9)(C)(i)(II) as an illegal reentrant was barred from adjusting his status under the special adjustment provision by the commencement of reinstatement proceedings, even though he had filed his I-212 waiver request and adjustment application prior to the initiation of reinstatement proceedings. 390 F.3d at 1162-63. The Tenth Circuit explained that the timing of the alien's application for adjustment of status was immaterial based on the plain language of the reinstatement provision and that a waiver under subsection (9)(C)(ii) can be obtained only after exiting the country and waiting ten years. *Id.* at 1163.

*Berrum-Garcia* also rejected *Perez-Gonzalez*'s reasoning that § 212.2(e) allows applicants for adjustment of status who have been previously removed or deported to apply for an I-212 waiver within the United States. *Id.* at 1167. The Tenth Circuit viewed this regulation as ambiguous, in that it "only implies that some aliens illegally present in the United States may apply for an I-212 waiver without leaving the country; it does not explicitly extend that privilege to aliens who have illegally reentered the country after a prior deportation or removal." *Id.* (emphasis omitted).

*Berrum-Garcia* also found § 212.2(i)(2) to be ambiguous. *Id.* While the regulation refers to "the date on which the alien embarked or reembarked," the court noted that the provision could apply to subsection (a)(9)(B)(i)(I), which provides for a waiver to an unlawfully present alien who had previously been in the United States for less than one year and voluntarily departed without being subject to formal removal proceedings. *Id.*

**[12]** The BIA concluded that 8 C.F.R. § 212.2 could not reasonably be construed as implementing subsection (a)(9)(C)(ii)'s waiver provision and could not be reconciled with the plain language of subsection (a)(9)(C)(ii). 23 I. & N. Dec. at 875. It disagreed with the reasoning in *Perez-Gonzalez* that the statutory ten-year limitation "would not cover the class of aliens under 8 C.F.R. § 212.2, who have been previously removed and are currently in this country *prior* to seeking permission to reapply." *Id.* at 876 (quoting *Perez-Gonzalez*, 379 F.3d at 794 n.10). The BIA considered the more reasonable interpretation of the statutory framework to be that an alien may not obtain a waiver under subsection (a)(9)(C)(ii), retroactively or prospectively, without regard to the ten-year bar. *Id.* It explained:

> *Perez-Gonzalez* allows an alien to obtain a section 212(a)(9)(C)(ii) waiver nunc pro tunc even though such a waiver would have been unavailable to him had he sought it prospectively, thereby placing him in a better position by asking forgiveness than he would have been in had he asked permission. Such an interpretation contradicts the clear language of section 212(a)(9)(C)(ii) and the legislative policy underlying section 212(a)(9)(C) generally.

*Id.*

---

The Tenth Circuit resolved the regulatory ambiguities by examining the text of the inadmissibility provisions (a)(9)(B) and (C), and the LIFE Act Amendments of 2000. *Id.* at 1167-68. The court relied on the LIFE Act Amendments' express exemption of Nicaraguans, Cuban, and Haitian immigrants from inadmissibility under subsection (a)(9)(A) and subsection (a)(9)(C), and the reinstatement provision, making them eligible to adjust their status despite being present in the United States after having been previously removed. *Id.* at 1168. The Tenth Circuit recognized that, by expressly exempting these aliens from the reinstatement provision, Congress understood that subsection (a)(9)(C) posed an obstacle to previously removed aliens seeking amnesty under the special adjustment provision. *Id.*

**H.    Because the BIA's statutory interpretation in *In re Torres-Garcia* is reasonable, it is entitled to *Chevron* deference under *Brand X***

The question, then, is whether we must defer to this ruling as a reasonable interpretation of the statutes. Plaintiffs urge that *Chevron* deference is owed only to the agency's regulation and not to the BIA's decision which they contend is contrary to the regulation. They also rely on *The Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1264 (9th Cir. 2006) (explaining that *Brand X* "requires that deference be given to an agency's interpretation of a statute unless a prior court's decision has held that the statute is incompatible with the agency's interpretation"), to argue that *Brand X* does not apply because our interpretation in *Perez-Gonzalez* is incompatible with the agency's interpretation.

The relevant inquiry is not whether we are required to defer to the agency's regulation but whether we must now—post *In re Torres-Garcia*—defer to that decision as a valid agency interpretation of the statute. The Supreme Court has accorded *Chevron* deference to BIA decisions, and we have followed suit. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *Perez-Enriquez v. Gonzales*, 463 F.3d 1007, 1009 (9th Cir. 2006) (en banc). Plaintiffs' argument—that the regulation should be accorded *Chevron* deference but the administrative decision interpreting that regulation in the context of the relevant statutory scheme should not be accorded deference—accordingly fails.

Moreover, plaintiffs are wrong when they assert that our statutory interpretation in *Perez-Gonzalez* was "incompatible with the agency's interpretation." Indeed, we relied on the agency's interpretation—*i.e.*, its regulation—to support our interpretation of the statutes in that case. Furthermore, the reliance on the agency regulation in *Perez-Gonzalez* does not prevent deference to *In re Torres-Garcia* today. *Brand X* explained that *Chevron* deference applies even when "an

agency interpretation [ ] was a recent reversal of agency poli-cy," 545 U.S. at 982, because "the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." *Id.* at 981 (internal quotation marks and citations omitted). Therefore, under *Chevron* and *Brand X* we are required to defer to *In re Torres-Garcia*'s interpretation of the statutory scheme, regardless of whether the agency once adhered to a different interpretation.

**[13]** In *In re Torres-Garcia*, the BIA held that an applicant who is inadmissible under subsection (a)(9)(C)(i)(II) is also ineligible to adjust his status under the special adjustment provision from within the United States. The alien is bound by subsection (a)(9)(C)(ii), requiring that he obtain permission to apply for readmission from outside the United States after ten years have lapsed from the date of his last departure. The BIA's decision is clearly reasonable and is therefore entitled to *Chevron* deference under *Brand X*.

## IV

The district court correctly determined that it has jurisdiction over this case and that *Fernandez-Vargas* does not under-mine the holding in *Perez-Gonzalez* that a successful I-212 waiver would avoid the reinstatement provision.[14]

**[14]** However, we vacate the district court's order because we hold today that we are bound by the BIA's interpretation of the applicable statutes in *In re Torres-Garcia*, even though that interpretation differs from our prior interpretation in *Perez-Gonzalez*. Pursuant to *In re Torres-Garcia*, plaintiffs as a matter of law are not eligible to adjust their status because

---

[14]We view the denial of an alien's I-212 waiver before commencing reinstatement proceedings as a ministerial act and an inadequate ground to sustain the preliminary injunction. Should the BIA hold in the future that a successful I-212 waiver would *not* avoid the reinstatement provision, a *Brand X* analysis of that holding would then be appropriate.

they are ineligible to receive I-212 waivers. Accordingly, the plaintiffs have no likelihood of success on the merits of their suit, and the preliminary injunction is vacated. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1385 (9th Cir. 1987) (holding that a showing of likelihood of success is essential for a preliminary injunction). The case is remanded for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**