Opinion by Judge FRIEDLAND; Dissent by Judge RICE.
OPINION
FRIEDLAND, Circuit Judge:
In Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir.2012) (en banc), we reserved the question whether a noncitizen applying for adjustment of immigration status could reasonably rely on an opinion of this court during a period in which the Board of Immigration Appeals (“BIA”) had issued a decision that was in tension with our opinion but before the BIA issued a decision directly disagreeing with our opinion. See id. at 522. We now answer that question with respect to Petitioner Acosta-Olivarria and hold that he reasonably relied on the law of this circuit when he applied for adjustment of status during that period.
I. Facts
Gilberto Acosta-Olivarria, a native and citizen of Mexico, entered the United States in 1995 and took up residence in Arizona with his wife and child. His wife is a lawful permanent resident and two of *1273 his now-three children are United States citizens.
Between 1995 and 2005, Acosta-Olivarria made multiple trips to and from Mexico. During that period, he was unlawfully present in the United States for a total of over one year, and he reentered the country without being admitted at least once. In 2006, he was arrested for illegal entry and was placed in removal proceedings.
While in removal proceedings, AcostaOlivarria applied for adjustment of status pursuant to 8 U.S.C. § 1255(i) and paid the required $1,000 fee. At the time, our precedent had interpreted § 1255(i) as allowing individuals who had been unlawfully present in the United States for more than a year, but who were eligible for a visa, to apply for an adjustment of status to become lawful permanent residents. See Acosta v. Gonzales, 439 F.3d 550, 556 (9th Cir.2006), overruled by Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir.2012) (en banc). Acosta-Olivarria was eligible for a visa because of a petition that his wife had filed based on her permanent-resident status.
In December 2006, an immigration judge (“IJ”) considered Acosta-Olivarria’s application. Although Acosta-Olivarria was “inadmissible” because he had been unlawfully present in the United States for more than one year and reentered without being admitted, 8 U.S.C. § 1182(a)(9)(C)(i)(I), the IJ held that he was nonetheless eligible for adjustment of status. In doing so, the IJ relied on our court’s decision in Acosta, which allowed noncitizens to seek relief under § 1255(i) despite being inadmissible under § 1182(a)(9)(C)(i)(I).[1] See Acosta, 439 F.3d at 556. Because his status as inadmissible did not bar his application, the IJ went on to consider the merits of the application and granted discretionary relief.
The Department of Homeland Security appealed the IJ’s decision. Before the BIA ruled on the appeal, a BIA panel issued a published opinion, In re Briones, 24 I. & N. Dec. 355 (B.I.A.2007), in which it held that an alien who is inadmissible under § 1182(a)(9)(C)(i)(I) is not eligible for adjustment of status under § 1255(i). See Briones, 24 I. & N. Dec. at 371. Based on Briones, the BIA remanded Acosta-Olivarria’s case to the IJ for further proceedings.
On remand, the IJ applied Briones and denied Acosta-Olivarria’s application for adjustment of status. Acosta-Olivarria appealed that decision, but the BIA agreed that Briones controlled. Acosta-Olivarria timely filed a petition for review of the BIA’s decision.
II. Legal Background
Tension between 8 U.S.C. § 1255(i) and 8 U.S.C. § 1182(a)(9)(C)(i)[2]
In 1994, Congress created a path to legal status for noncitizens who had entered the United States without inspection but were nonetheless eligible for a visa. See Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, Pub.L. No. 103-317, § 506(b), 108 Stat. 1724, 1765-66 (1994) (codified as amended at 8 U.S.C. § 1255(i)). To qualify for this type of relief, noncitizens must be “admissible” for permanent residence. § 1255(i)(2)(A).
When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRIRA”), it created *1274 new categories of noncitizens who were inadmissible. See IIRIRA, Pub.L. No. 104-208, Div. C., § 302(b)(1), 110 Stat. 3009-546, 3009-576 to -578. Section 1182(a)(9)(C)(i)(I) — which we will refer to as the “one-year bar” — makes noncitizens inadmissible if they have been “unlawfully present in the United States for an aggregate period of more than 1 year.” Section 1182(a)(9)(C)(i)(II) — which we will refer to as the “removal-order bar” — makes noncitizens inadmissible if they have been ordered removed from the United States. Congress did not specify what should happen when noncitizens who are inadmissible under either provision apply for adjustment of status under § 1255(i).
The Ninth Circuit and the BIA Weigh In
In Perez-Gonzalez v. Ashcroft, 379 F.3d 783 (9th Cir.2004), overruled by Gonzales v. Dep’t of Homeland Sec., 508 F.3d 1227 (9th Cir.2007), we held that noncitizens could apply for adjustment of status despite being inadmissible under the removal-order bar. Id. at 792-95. We held that interpreting inadmissibility under that provision as a bar to adjustment of status would conflict with certain regulations implementing the Immigration and Nationality Act and lead to illogical results. See id. at 793-94.
The BIA disagreed. In a published opinion, In re Torres-Garcia, 23 I. & N. Dec. 866 (B.I.A.2006), the BIA rejected Perez-Gonzalez’s interpretation of the regulations. See Torres-Garcia, 23 I. & N. Dec. at 874-75. Accordingly, it held that inadmissibility under the removal-order bar precluded noncitizens from obtaining adjustment of status under § 1255(i). See Torres-Garcia, 23 I. & N. Dec. at 870, 876.
Less than one month after the BIA’s decision in Torres-Garcia, we addressed the corresponding question with respect to inadmissibility under the one-year bar. In Acosta v. Gonzales, 439 F.3d 550 (9th Cir.2006), overruled by Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir.2012) (en banc), we relied on Perez-Gonzalez to hold that noncitizens inadmissible under the one-year bar were not precluded from seeking adjustment of status under § 1255(i). Acosta, 439 F.3d at 553-56. Our decision in Acosta did not acknowledge the BIA’s decision in Torres-Garcia.
Twenty-one months after our decision in Acosta, the BIA addressed whether noncitizens inadmissible under the one-year bar are prohibited from seeking adjustment of status under § 1255(i). Again, the BIA disagreed with us. In In re Briones, 24 I. & N. Dec. 355 (B.I.A.2007), the BIA held that inadmissibility under the one-year bar prevents a noncitizen from obtaining adjustment of status under § 1255(i). See Briones, 24 I. & N. Dec. at 370.
When we next were presented with the questions from Perez-Gonzalez and Acosta, we applied the Supreme Court’s decision in Brand X[3] and deferred to the BIA’s interpretations in Torres-Garcia and Briones, adopting them as our own. Thus, in Gonzales, we held that our decision in Perez-Gonzalez was no longer valid in light of Torres-Garcia. See Gonzales, 508 F.3d at 1235-42. And in Garfias-Rodriguez, we overruled Acosta because of the BIA’s decision in Briones. See Garfias-Rodriguez, 702 F.3d at 512-14. Retroactivity
Neither Briones nor our adoption in Garfias-Rodriguez of the BIA’s *1275 interpretation from Briones ends the analysis for petitioners, such as Acosta-Olivarria, who filed their applications for adjustment of status before the BIA decided Briones. In Garfias-Rodriguez, we held that to determine whether Briones applies retroactively to a particular applicant for adjustment of status, we apply the test set forth in Montgomery Ward & Co., Inc. v. Federal Trade Commission, 691 F.2d 1322 (9th Cir.1982). See Garfias-Rodriguez, 702 F.3d at 517-18. Montgomery Ward’s five-factor balancing test requires that we consider:
(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.
Garfias-Rodriguez, 702 F.3d at 518 (quoting Montgomery Ward, 691 F.2d at 1333). Because the test requires that a court look at an individual’s own reliance, this retro-activity analysis is applied “on a case-by-case basis.” Id. at 519; see also id. at 523 n. 13 (“We express no opinion whether other applicants may qvoid the retroactive effect of Briones.”).
III. Discussion
Applying the Montgomery Ward retroactivity analysis to Acosta-Olivarria’s case,[4] we hold that the BIA’s decision in In re Briones, 24 I. & N. Dec. 355 (B.I.A. 2007), does not apply retroactively to bar his application.
The First Factor: Whether the Issue Is One of First Impression
As we recognized in Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir.2012) (en banc), the first factor was developed in the context of private-party litigation before the National Labor Relations Board (“NLRB”) and is not well suited for immigration rulings. See id. at 520-21. In the NLRB context, this factor is meant to ensure that the party responsible for a change in law receives the benefits of the new rule. Id. at 520. In the immigration context, in which the government is always a party, this concern is less relevant. Id. at 521. Accordingly, this factor does not weigh in either direction for purposes of determining whether to apply the rule from Briones retroactively.
The Second and Third Factors: Whether the New Rule Represents an Abrupt Departure and the Extent of the Petitioner’s Reasonable Reliance on the Former Rule
The second and third Montgomery Ward factors are “closely intertwined.” Garfias-Rodriguez, 702 F.3d at 521. “If a new rule ‘represents an abrupt departure from well established practice,’ a party’s reliance on the prior rule is likely to be reasonable, whereas if the rule ‘merely attempts to fill a void in an unsettled area of law,’ reliance is less likely to be reasonable.” Id.
Acosta-Olivarria applied for adjustment of status in July 2006. At the time, our decision in Acosta v. Gonzales, 439 F.3d 550 (9th Cir.2006), overruled by GarfiasRodriguez, 702 F.3d 504, held that noncitizens in his position could apply to become lawful permanent residents, see id. at 556, *1276 and the BIA had not yet issued its contrary decision in Briones.
Acosta-Olivarria argues that he relied on our decision in Acosta in two ways. First, he filed his application for adjustment of status, along with the corresponding $1,000 fee, at a time when the law in our circuit allowed noncitizens to apply for adjustment of status under 8 U.S.C. § 1255© despite being inadmissible under the one-year bar (8 U.S.C. § 1182(a)(9)(C)(i)(I)). Indeed, in granting his request for adjustment of status, the IJ specifically relied on Acosta in holding that Acosta-Olivarria was eligible for relief under § 1255®, despite being inadmissible under the one-year bar. Retroactive application of the rule from Briones would cause Acosta-Olivarria’s application for adjustment of status to be denied, without any refund of the $1,000 fee. Second, Acosta-Olivarria gave up the opportunity to voluntarily depart the United States and start a ten-year clock after which he could have sought admission. Had he voluntarily departed in 2006 instead of staying and filing his application for adjustment of status, Acosta-Olivarria would have been able to seek admission starting in 2016.[5]
The government does not contest that Acosta-Olivarria subjectively relied on Acosta. Rather, it contends that no one who applied for adjustment of status between our decision in Acosta and the BIA’s decision in Briones could have reasonably relied on Acosta because the BIA’s decision in In re Torres-Garcia, 23 I. & N. Dec. 866 (B.I.A.2006), held that inadmissibility under the removal-order bar precludes the noncitizen from applying for adjustment of status under § 1255(i). See Torres-Garcia, 28 I. & N. Dec. at 870-71, 876. In the government’s view, Torres-Garcia should have enabled noncitizens such as Acosta-Olivarria to predict that Acosta would not survive.
We disagree. It was reasonable for Acosta-Olivarria to rely on our decision in Acosta. At the time he applied for adjustment of status, a published opinion of this court allowed noncitizens in his position to apply for adjustment of status despite being inadmissible, and there was no contrary BIA decision interpreting the one-year bar because Briones had not yet been decided. When we announce a legal rule, we do so not only for the benefit of courts, but also for the benefit of the general public. People within the Ninth Circuit should be able to rely on our opinions in making decisions. See U.S. Bancorp Mortg. Co. v. Bonner Mall P’ship, 513 U.S. 18, 26, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (“Judicial precedents are presumptively correct and valuable to the legal community as a whole.”).
Consistent with this, we noted in Garfias-Rodriguez that reliance “might have been reasonable” if the petitioner had applied within the 21-month period between this court’s decision in Acosta and the BIA’s decision in Briones. Garfias-Rodriguez, 702 F.3d at 522. There, we rejected the petitioner’s particular reliance argument because he had filed his application before Perez-Gonzalez v. Ashcroft, 379 F.3d 783 (9th Cir.2004), or Acosta had been decided. See Garfias-Rodriguez, 702 F.3d at 522. The petitioner in GarfiasRodriguez could not have taken any actions in reliance on an earlier rule of law from our court because there was no such earlier rule. But that is not true of Acosta-Olivarria.
*1277 The dissent argues that the government is correct that Acosta-Olivarria could not have relied on Acosta, because the landscape of the law on this general issue was changing rapidly. In particular, Perez-Gonzalez, which held that inadmissibility under the removal-order bar did not preclude applications for adjustment of status, had been drawn into question by the BIA’s decision in Torres-Garcia by the time Acosta-Olivarria filed his application. This argument, however, conflates the two bars to admissibility in § 1182(a)(9)(C)(i). Perez-Gonzalez and Torres-Garcia were about the effect of the removal-order bar. See Perez-Gonzalez, 379 F.3d at 792-95; Torres-Garcia, 23 I. & N. Dec. at 868. Acosta-Olivarria was inadmissible under the one-year bar. At the time he applied for adjustment of status, Acosta was the only decision in this jurisdiction on the interaction between the one-year bar and the relief he sought. The dissent argues that the two subsections of § 1182(a)(9)(C)(i) cannot be treated differently. But this would be a reason for arguing that Acosta was wrongly decided in light of Torres-Garcia and Brand X, not a reason why reliance on Acosta would be unreasonable — particularly given that Acosta was decided after Torres-Garcia and Brand X. Our task here is not to grade our court’s performance in deciding Acosta, but rather to decide whether it was reasonable for Acosta-Olivarria to rely on that decision.
We hold that it was reasonable for Acosta-Olivarria to rely on the law of this circuit deciding the precise legal question he faced, so the second and third Montgomery Ward factors weigh against applying Briones retroactively.
The Fourth Factor: The Degree of the Burden That a Retroactive Order Imposes on a Party
The fourth Montgomery Ward factor cuts strongly against applying the rule from Briones retroactively because doing so would substantially burden Acosta-Olivarria. See Garfias-Rodriguez, 702 F.3d at 523 (“[DJeportation alone is a substantial burden that weighs against retroactive application of an agency adjudication.”). Before the BIA applied Briones, the IJ had granted Acosta-Olivarria’s application for adjustment of status and thus allowed him to remain in the United States with his family. If the Briones rule is applied retroactively, he will face deportation.
The Fifth Factor: Interest in Applying the New Rule Consistently
We recognized in Garfias-Rodriguez that retroactive application of the rule from Briones helps ensure uniformity in the application of the immigration laws. But we emphasized that, because the new rule in Briones does not follow from the plain language of the statute, this factor “only leans” in favor of retroactive applica-, tion. Garfias-Rodriguez, 702 F.3d at 523.
* * *
Weighing all the factors, we hold that Briones should not be applied retroactively in this case. Acosta-Olivarria’s reliance interests and the burden that retroactivity would impose on him outweigh the interest in uniform application of the immigration laws.
IV. Conclusion
For the foregoing reasons, we GRANT the petition for review and REMAND with instructions to reinstate the IJ’s 2006 order granting adjustment of status.

. Title 8 U.S.C. § 1182(a)(9)(C)(i) is the codification of the Immigration and Nationality Act ("INA”) § 212(a)(9)(C)(i). Tifie 8 U.S.C. § 1255(i) is the codification of INA § 245(i).

. A fuller summary of this legal background is provided in Garfias-Rodriguez v. Holder, 702 F.3d 504, 509-12 (9th Cir.2012) (en banc).

. Although the BIA did not rule on the retro-activity question, we may address it in the first instance. The parties have filed supplemental briefs on the issue, and the BIA has no special expertise regarding retroactivity. See Garfias-Rodriguez v. Holder, 702 F.3d 504, 514-15 (9th Cir.2012) (en banc).

. See Nat’l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.”).

. The inadmissibility bars in 8 U.S.C. § 1182(a)(9)(C)(i)(I) and (II) are subject to a relevant exception: if the noncitizen has been outside of the United States for more than ten years, he or she may apply for admission without being subject to the two bars. See § 1182(a)(9)(C)(ii).