**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE RIVERA VEGA, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 19-71750 Agency No. A022-870-507 OPINION |

On Petition for Review of an Order
of an Immigration Judge

Argued and Submitted March 11, 2022
Pasadena, California

Filed July 8, 2022

Before: Sandra S. Ikuta, Kenneth K. Lee, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Lee

## SUMMARY[*]

### Immigration

Denying Jorge Rivera Vega's petition for review of an order of an Immigration Judge, the panel held that: 1) the permanent inadmissibility bar of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) applied retroactively to Rivera Vega such that he was ineligible for adjustment of status; 2) his prior removal order was properly reinstated; 3) his statutory right to counsel in reasonable fear proceedings was not violated; and 4) the IJ properly rejected his claim for protection under the Convention Against Torture (CAT).

Rivera Vega was deported in 1991, but illegally re-entered the next week. In 2001, he applied for adjustment, the United States Citizenship and Immigration Services (USCIS) denied that application in 2019, and Rivera Vega's prior removal order was reinstated. An asylum officer then determined that Rivera Vega lacked a reasonable fear of persecution or torture if returned to Mexico, and an IJ affirmed.

Before this court, Rivera Vega claimed that USCIS erroneously concluded that he was statutorily ineligible for adjustment. Because USCIS was required to decide his adjustment application before his removal order could be reinstated, the panel explained that, if USCIS erred as to adjustment, the panel was required to vacate the reinstatement order and remand to USCIS.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

USCIS denied Rivera Vega's adjustment application for three reasons, the last of which being that he was permanently inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(II) and not eligible for a waiver of inadmissibility. The inadmissibility bar of § 1182(a)(9)(C)(i)(II) was enacted as part of IIRIRA and provides that any alien who is removed and later illegally re-enters is permanently inadmissible. The panel explained that each of the reasons proffered by USCIS, if valid, independently barred Rivera Vega's claim. The panel observed that USCIS factually erred on its first two grounds, but concluded that it lacked jurisdiction to review such factual findings under *Patel v. Garland*, 142 S. Ct. 1614 (2022), and therefore, his claim was independently barred on those grounds. In the alternative, the panel concluded that his claim would still be barred because the third reason for denying adjustment was valid. In doing so, the panel rejected his contention that the permanent inadmissibility bar should not apply to individuals, like himself, who illegally re-entered before IIRIRA's effective date of April 1, 1997.

Specifically, the panel held that the permanent inadmissibility bar applies retroactively to unlawful reentries made before IIRIRA's effective date—provided the alien failed to apply for adjustment before that date—because doing so does not impose a new legal consequence based on past conduct. First, the panel explained that Rivera Vega did not have a vested right in adjustment relief because, before IIRIRA, he was eligible to adjust, but his failure to do so before the effective date doomed his claim. Second, IIRIRA imposed a new legal consequence on Rivera Vega not for his pre-IIRIRA illegal reentry but because of his illegal presence after IIRIRA; if he had departed the country and remained abroad for ten years, he would have

been eligible for a waiver of inadmissibility—and thus adjustment—by the time USCIS decided his application. Lastly, given IIRIRA's aims of toeing a harder line on immigration and limiting the availability of discretionary relief, it would be anomalous for Rivera Vega to obtain, through an immigration infraction, a perpetual right to seek relief at his own convenience. Accordingly, the panel held that USCIS correctly denied Rivera Vega's application, and his removal order was therefore properly reinstated.

As to his reasonable fear hearing, Rivera Vega argued that his right to counsel was violated because the IJ conducted his hearing without his counsel present. In *Orozco Lopez v. Garland*, 11 F.4th 764 (9th Cir. 2021), this court held that aliens are statutorily entitled to counsel, at no expense to the government, at their reasonable fear hearings. However, the court cabined this right to being notified of the right to counsel and given the opportunity to obtain counsel. The panel concluded that Rivera Vega's right to counsel was not violated, explaining that he knew of this right, he received a notice advising him of his right to counsel, and apparently retained an attorney for the hearing, but the attorney failed to appear.

Lastly, Rivera Vega claimed that the IJ erred in adjudicating his claim for CAT relief by requiring that the feared torturer be a government official and ignoring the possibility of mere government acquiescence to torture conducted by a private actor. However, the panel explained that, if an alien fails to show a reasonable possibility of future torture, then government acquiescence is irrelevant. Here, the IJ concluded that Rivera Vega had not even suffered past persecution, let alone torture, because the only time he was harmed in Mexico was when he was assaulted

outside a bar in 1976. The panel concluded that this finding was supported by substantial evidence.

## COUNSEL

Megan Brewer (argued) and Stacy Tolchin, Law Offices of Stacy Tolchin, Pasadena, California, for Petitioner.

Jaclyn E. Shea (argued), Trial Attorney; Derek C. Julius, Assistant Director; Brian Boynton, Acting Assistant Attorney General; Criminal Immigration Team, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

LEE, Circuit Judge:

This case involves facts spanning over three decades, a tortuous procedural history, and inexplicable factual errors made by the United States Citizenship and Immigration Services (USCIS). But ultimately the outcome hinges on whether we apply retroactively a provision in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) preventing "inadmissible" aliens from adjusting their status to lawful permanent residents. If it applies retroactively, petitioner Jorge Rivera Vega—who is considered "inadmissible" because he re-entered unlawfully after being removed in 1991—cannot seek adjustment of his immigration status.

We hold that IIRIRA's permanent inadmissibility provision applies retroactively because doing so does not

impose a new legal consequence based on past conduct. Rivera Vega had no vested right to the discretionary relief of adjustment of immigration status because he failed to timely seek such relief. And the IIRIRA provision does not penalize Rivera Vega's pre-IIRIRA act of unlawfully re-entering the United States but rather the post-IIRIRA conduct of illegally remaining here. We thus deny the petition.

## BACKGROUND

Decades ago, Jorge Rivera Vega, a native of Mexico, unlawfully entered the United States but was deported on January 30, 1991. Just a week later, however, Rivera Vega illegally re-entered the United States and remained off the radar of immigration authorities for decades. In 2001, he sought discretionary relief to adjust his status and become a lawful permanent resident.

But Rivera Vega's potential path to becoming a lawful permanent resident was not so straightforward. Typically, an alien who enters the United States illegally may be removed from the country after a hearing before an Immigration Judge (IJ). 8 U.S.C. §§ 1182, 1227, 1229a; 8 C.F.R. § 1240.1(a)(1). If he re-enters unlawfully, however, the prior removal order may be reinstated via a summary proceeding without a hearing. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(a). And important here, once a removal order is reinstated, an alien is generally precluded from seeking "any relief." 8 U.S.C. § 1231(a)(5). That would have seemingly precluded Rivera Vega from seeking adjustment of status to a lawful permanent resident.

But until a reinstatement order has issued, an alien can still seek discretionary relief to become a lawful permanent resident. If granted, such relief would forgive his prior

immigration violations and shield him from removal.  *See* 8 U.S.C. § 1255(i); *see also Patel v. Garland*, __ U.S.__, 142 S. Ct. 1614, 1619 (2022) (the granting of adjustment of status is "a matter of grace" committed to the discretion of the Attorney General. (quoting *INS v. St. Cyr*, 533 U.S. 289, 308 (2001))).  Here, despite USCIS's initial insistence that the reinstatement order had been issued in 2010, it had not.

But it still was not clear sailing for Rivera Vega.  An alien must meet certain statutory criteria to be eligible for discretionary relief of adjustment of status. The criteria changed when Congress enacted IIRIRA, which was passed on September 30, 1996 and became effective on April 1, 1997.  *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33, 45 (2006) (citing Pub. L. 104-208, div. C, 110 Stat. 3009-546).  IIRIRA made it harder for aliens to adjust their immigration status. *Id.* at 33–35.  For example, an alien is ineligible for status adjustment if he falls into one of the many classes of "inadmissible" aliens created by IIRIRA, including unlawfully re-entering the United States after being removed.  *See* 8 U.S.C. § 1182.  Rivera Vega thus would be an "inadmissible" alien under IIRIRA.  But that still did not completely close the door for Rivera Vega.  Under the law, he could obtain a discretionary waiver of this inadmissibility in some cases by filing a Form I-212.  *See id*. §§ 1182, 1255(a).

So, in 2004, while his application for adjustment of status remained pending, Rivera Vega filed a Form I-212 seeking a waiver of inadmissibility.  Despite USCIS's initial—and yet again erroneous—conclusion that he was denied the waiver, Rivera Vega in fact received a waiver of § 1182(a)(9)(A)(ii)'s ten-year inadmissibility bar in 2005.  *See id*. § 1182(a)(9)(A)(ii) (making any previously removed alien inadmissible for 10 years).

For the next decade, Rivera Vega's adjustment of status application remained in limbo. On March 20, 2019, Rivera Vega appeared for an interview with USCIS to determine his eligibility for adjustment of status. 8 C.F.R. § 245.2(a)(1) (granting USCIS authority to adjudicate applications for adjustment of status outside of removal proceedings).

About a month later on April 16, USCIS denied Rivera Vega's application to adjust his immigration status. The agency concluded that Rivera Vega was statutorily ineligible for adjustment of status because: (1) in 2010, the Department of Homeland Security (DHS) had reinstated Rivera Vega's 1991 removal order, rendering him ineligible for "any relief" under § 1231(a)(5); (2) Rivera Vega was inadmissible for ten years under § 1182(a)(9)(A)(ii) and he failed to obtain a waiver of inadmissibility; and (3) Rivera Vega was permanently inadmissible under § 1182(a)(9)(C)(i)(II) and was ineligible for a waiver of inadmissibility. As noted earlier, the first two grounds were factually wrong at the time.

A few weeks later on May 17, agents from the United States Immigration and Customs Enforcement (ICE) arrested Rivera Vega. On the same day, DHS reinstated Rivera Vega's 1991 removal order.

Because Rivera Vega expressed a fear of returning to Mexico, an asylum officer interviewed him. Rivera Vega's counsel appeared at the interview. The asylum officer determined that Rivera Vega lacked a reasonable fear of persecution or torture if returned to Mexico and referred the case to an IJ for reasonable fear review proceedings.

Rivera Vega appeared before the IJ in June 2019. Though Rivera Vega expected his counsel to be there, his attorney did not show. Rivera Vega told the IJ that he was

under the impression that his attorney would be present, so the IJ checked for a notice of representation or correspondence from Rivera Vega's attorney but found neither. When Rivera Vega still expressed trepidation about proceeding without counsel, the IJ responded:

> Okay, well, sir, there's a limited amount of time that I have available for me to review the findings of the asylum officer. And in these proceedings the attorneys are not allowed to argue or to present evidence because all my job is today is to review what already occurred with you and the asylum officer. Do you understand?

Rivera Vega then agreed to proceed without counsel.

The IJ reviewed the asylum officer's notes with Rivera Vega. Rivera Vega testified that he feared returning to Mexico because of criminals, but he confirmed that the only harm he suffered in Mexico was when someone randomly assaulted him outside a bar in 1976. Moreover, Rivera Vega has never been harmed by the Mexican government, nor does he fear future harm from the government. After listening to Rivera Vega's testimony, the IJ held that Rivera Vega lacked a reasonable fear of persecution or torture. Rivera Vega had not suffered past harm rising to the level of persecution, let alone torture, and there was no evidence that any harm was inflicted by the government on account of a protected ground. Rivera Vega was removed to Mexico the next day on June 14, 2019.

Rivera Vega timely petitioned for review with this court, challenging: (1) the April 16, 2019, USCIS decision denying his adjustment of status application; (2) the May 17, 2019,

reinstatement of removal order; and (3) the IJ's June 13, 2019, negative reasonable fear determination.

Months later, on November 27, 2019, USCIS reopened its April 16, 2019, order. USCIS acknowledged that one of its stated reasons for denying the application—that Rivera Vega's 1991 removal order was reinstated in 2010—was erroneous. That same day, USCIS administratively closed Rivera Vega's application because the agency concluded that it lacked jurisdiction as Rivera Vega was "currently in proceedings before an [IJ]." 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

Almost a year later, on November 23, 2020, USCIS issued a new decision denying Rivera Vega's adjustment of status application.[1] Because Rivera Vega departed the United States on June 14, 2019—after DHS reinstated his removal order and while his application was still pending— USCIS considered the application to be abandoned. *See id.* § 245.2(a)(4)(ii).

Rivera Vega argues that an adjustment of status application must be properly adjudicated *before* a removal order may be reinstated. Thus, Rivera Vega contends that only the April 16, 2019, order denying adjustment of status—and not the later decisions on November 27, 2019, and November 23, 2020—may support the May 17, 2019, reinstatement order. Rivera Vega also claims that the April 16 order erroneously concluded that he was statutorily ineligible for adjustment of status. And because his reinstatement order turned on an erroneous denial of

---

[1] On December 23, 2020, Rivera Vega filed a motion to reconsider the November 23, 2020, decision. USCIS denied the motion on February 17, 2021.

adjustment of status, Rivera Vega requests that we vacate his reinstatement order and remand for USCIS to consider whether to grant his application.

Should we affirm his reinstatement order, Rivera Vega seeks vacatur of the IJ's June 13, 2019, negative reasonable fear determination. By proceeding without his attorney, Rivera Vega claims that the IJ violated his right to counsel in reasonable fear hearings under *Orozco-Lopez v. Garland*, 11 F.4th 764 (9th Cir.), *reh'g denied*, 2021 U.S. App. LEXIS 34171 (9th Cir. Nov. 17, 2021). Alternatively, Rivera Vega argues that the IJ ignored the possibility of "government acquiescence" to torture, and thus applied an incorrect legal standard to his claim under the Convention Against Torture (CAT).

## STANDARD OF REVIEW

We review jurisdictional and legal questions in the context of immigration proceedings de novo. *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016); *Abdisalan v. Holder*, 774 F.3d 517, 521 (9th Cir. 2014). We review an IJ's negative reasonable fear determination for substantial evidence. *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831 (9th Cir. 2016).

## DISCUSSION

**I. Rivera Vega's removal order was properly reinstated because he was permanently inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(II), and thus ineligible for adjustment of status.**

If an alien has a pending adjustment of status application, USCIS "is required to consider whether to exercise its discretion in the alien's favor *before* it can proceed with

reinstatement proceedings." *See Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 795 (9th Cir. 2004) (emphasis added), *overruled on other grounds by Gonzales v. DHS*, 508 F.3d 1227 (9th Cir. 2007). That means that we review only USCIS's initial April 16, 2019, order denying Rivera Vega's adjustment of status application—and not the later two orders—in assessing the May 17, 2019, reinstatement order. If USCIS mistakenly concluded that Rivera Vega was statutorily ineligible for adjustment of status in that April 16 order, we must vacate the May 17 reinstatement order and "remand to the USCIS for a discretionary determination on appropriate legal grounds." *Id.* at 795–96.[2]

In its April 16, 2019, order, USCIS offered three reasons why Rivera Vega was ineligible for adjustment of status to a lawful permanent resident: (1) DHS in 2010 had purportedly reinstated Rivera Vega's 1991 removal order, rendering him ineligible for "any relief" under § 1231(a)(5); (2) Rivera Vega was inadmissible for ten years under § 1182(a)(9)(A)(ii) and he failed to obtain a waiver of inadmissibility; and (3) Rivera Vega was permanently

---

[2] The government argues that we lack jurisdiction to review USCIS's eligibility determinations because the April 16 order denying Rivera Vega's application is not an "order of removal." *See* 8 U.S.C. § 1252(a)(1). While we agree that the statutory text plainly limits judicial review to only a "final order of removal," we have held in an almost identical case that a petition challenging a denial of adjustment of status can "properly [be] construed as a challenge to an 'order of removal'" because his adjustment of status application is "inextricably linked" to his reinstatement order. *Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1082–83 (9th Cir. 2010). Put another way, if Rivera Vega is granted the relief he seeks—"adjustment of status to that of an LPR [Legal Permanent Resident]—the Reinstatement Order would be rendered invalid." *Id.* We are bound to follow this precedent and cannot overrule a prior panel decision even if we disagree with it. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

inadmissible under § 1182(a)(9)(C)(i)(II) and was ineligible for a waiver of inadmissibility.

Each of the three reasons proffered by USCIS, if valid, independently bars Rivera Vega's claim. While USCIS factually erred on its first two reasons, we lack jurisdiction to review factual findings under the Supreme Court's recent decision in *Patel*. __ U.S.__, 142 S. Ct. at 1623, 1627 (holding that federal courts can review "constitutional claims and questions of law" but lack "jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255"). The erroneous factual findings underlying the first two reasons proffered by USCIS cannot be disturbed under *Patel*, and so Rivera Vega's claim is independently barred on those grounds. In the alternative, Rivera Vega's claim would still be barred because USCIS's third reason for denying his petition for adjustment of status is valid.

Under § 1182(a)(9)(C)(i)(II), any alien who is removed and later re-enters the United States illegally is permanently inadmissible. Further, an alien cannot obtain a waiver of permanent inadmissibility under § 1182(a)(9)(C)(ii) until he departs the United States and remains abroad for ten years. *Gonzales*, 508 F.3d at 1242 (holding that an alien "who is inadmissible under subsection (a)(9)(C)(i)(II) is also ineligible to adjust his status . . . from within the United States" because of subsection (a)(9)(C)(ii)'s ten-year waiting period) (adopting *Matter of Torres-Garcia*, 23 I. & N. Dec. 866 (B.I.A. 2006)).

Rivera Vega disputes neither that he was earlier removed and unlawfully re-entered, nor that he failed to remain outside the United States for ten years, as required to obtain a waiver. Rather, he argues that the inadmissibility ground at § 1182(a)(9)(C)(i)(II) does not apply to individuals, like himself, who illegally re-entered the United States *before*

IIRIRA went into effect.  In other words, Rivera Vega contends that it would be impermissibly retroactive to apply this IIRIRA provision to his pre-IIRIRA reentry.

We have long recognized the presumption that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)).  But this presumption against retroactive legislation is not absolute:  we "read laws as prospective in application unless Congress unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012).

To determine whether legislation applies retroactively, we first look to the statute's text to determine "whether Congress has expressly prescribed the statute's proper [temporal] reach."  *Fernandez-Vargas*, 548 U.S. at 37 (quoting *Landgraf*, 511 U.S. at 280).  If the statute's text is silent, we next ask whether the statute "attaches new legal consequences to events completed before its enactment." *Maldonado-Galindo v. Gonzales*, 456 F.3d 1064, 1067 (9th Cir. 2006) (quoting *St. Cyr*, 533 U.S. at 321).  If we answer yes, then we apply the presumption by "construing the statute as inapplicable to the event or act in question." *Fernandez-Vargas*, 548 U.S. at 37–38.

Neither the Supreme Court nor our circuit has decided whether § 1182(a)(9)(C)(i)(II)'s permanent inadmissibility bar applies to pre-IIRIRA reentries.[3]  Section 1182(a)(9)(C)

---

[3] Rivera Vega claims that we have already decided this issue in his favor.  In a footnote in *Carrillo de Palacios v. Holder*, we said that the permanent inadmissibility bar applies to aliens "who enter or attempt to re-enter the United States unlawfully any time on or after April 1, 1997."

is silent about its temporal reach: it requires a past act of illegal reentry but makes no mention of when that reentry must occur. Thus, we must proceed to the next question of whether applying the inadmissibility bar to Rivera Vega's pre-IIRIRA reentry would impose a "new legal consequence[]" on account of past conduct. *Maldonado-Galindo*, 456 F.3d at 1067. We conclude that it does not.

First, Rivera Vega does not have a vested right in the relief he seeks. Before IIRIRA, Rivera Vega was eligible to adjust his status. But such relief depended on Rivera Vega applying for it, and his failure to do so until after IIRIRA went into effect dooms his claim. *See Fernandez-Vargas*, 548 U.S. at 45–46; *see also Ixcot v. Holder*, 646 F.3d 1202, 1212 (9th Cir. 2011) (In determining whether an application of IIRIRA is impermissibly retroactive, "the most salient fact . . . is whether an alien filed for relief *before* IIRIRA's effective date.") (emphasis in original).

The Supreme Court's decision in *Fernandez-Vargas* guides our analysis. The Court there held that IIRIRA's reinstatement provision applied to individuals who re-entered the United States before the Act's effective date. *Id.* at 33. It emphasized the 180-day lag between IIRIRA's passage on September 30, 1996, and its effective date on April 1, 1997. *Id.* at 45; *see* § 309(a), 110 Stat. 3009-625. This provided the alien with "a grace period between the unequivocal warning that a tougher removal regime lay

---

708 F.3d 1066, 1070 n.3 (9th Cir. 2013) (quoting Immigration and Naturalization Service, Interim Guidance on New Grounds of Inadmissibility (June 17, 1997), *as reprinted in* 74 No. 25 Interpreter Releases 1033). But *Carrillo* involved an alien that unlawfully re-entered *after* IIRIRA went into effect, *see id.* at 1070–71, so the applicability of § 1182(a)(9)(C)(i)(II) to pre-IIRIRA reentries was not at issue.

ahead and actual imposition of the less opportune terms of the new law." *Id.* During this grace period, the alien could have applied for adjustment of status, which would have transformed his "inchoate expectation" of relief into a "vested right." *Id.* at 44, n.10. But the alien took no action, so retroactive application of the reinstatement provision did not deprive him of anything to which he was previously entitled. *Id.*

Like the alien in *Fernandez-Vargas*, Rivera Vega failed to apply for adjustment of status before IIRIRA's effective date. Rivera Vega last entered the United States in 1991, years before IIRIRA's passage. Yet he never applied for relief during that time. And even after IIRIRA was enacted, Rivera Vega did not seek relief during the six-month grace period. Because of his inaction, Rivera Vega does not have a vested right in the adjustment of status claim that retroactive application of § 1182(a)(9)(C)(i)(II) extinguishes. *See Montoya v. Holder*, 744 F.3d 614, 617 (9th Cir. 2014) (explaining that "[u]p until this last step—the application—the alien" has no "vested right to apply for adjustment [of status]"); *cf. Ixcot*, 646 F.3d at 1213 (holding that IIRIRA's "reinstatement provision is impermissibly retroactive . . . when applied to an immigrant . . . who applied for immigration relief prior to IIRIRA's effective date").

Second, IIRIRA imposes a new legal consequence on Rivera Vega—indefinite ineligibility for adjustment of status—not for his pre-IIRIRA illegal reentry but because of his continuous illegal presence within the United States *after* IIRIRA went into effect. In layman's terms, he is not being penalized for illegally re-entering in 1991 (before IIRIRA went into effect) but for unlawfully staying here after IIRIRA's effective date.

Again, the Court's decision in *Fernandez-Vargas* is instructive. The Court determined that the reinstatement provision targets the alien's "conduct of remaining in the country after entry." *Fernandez-Vargas*, 548 U.S. at 44. Though the statute requires a past act of illegal reentry, it "applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country." *Id.* Thus, "the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law" subjects him to reinstatement, "not a past act that he is helpless to undo." *Id.*

Like its reinstatement provision, IIRIRA's permanent inadmissibility bar targets Rivera Vega's continuous illegal presence. *Id.* Section (a)(9)(C) is titled "Aliens *unlawfully present after* previous immigration violations," 8 U.S.C. § 1182(a)(9)(C) (emphasis added), showing that Congress intended to limit relief given Rivera Vega's illegal presence after his unlawful reentry. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (noting that a statute's title may be used to interpret the statute).

An alien is also eligible to obtain a waiver of permanent inadmissibility if he departs the United States and remains abroad for ten years. *See* § 1182(a)(9)(C)(ii); *Gonzales*, 508 F.3d at 1242. If not for Rivera Vega's continued presence within the United States since 1991, he would have been statutorily eligible for a waiver of inadmissibility—and thus adjustment of status—by the time USCIS decided his application in 2019. Rivera Vega was not "helpless to undo" the consequences of his pre-IIRIRA conduct. *Cf. Vartelas*, 566 U.S. at 270 (holding that an IIRIRA provision precluding foreign travel by LPRs with certain pre-IIRIRA convictions was impermissibly retroactive because the alien

was "helpless to undo" the crime (quoting *Fernandez-Vargas*, 548 U.S. at 44)).

Lastly, we note that retroactive application of IIRIRA's permanent admissibility bar dovetails with Congress's intent to "toe[] a harder line," *Fernandez-Vargas*, 548 U.S. at 34–35, and "limit[] the availability of discretionary relief from deportation," *Castello-Diaz v. AG of the U.S.*, 174 Fed. Appx. 719, 724 (3d Cir. 2006). Given IIRIRA's aims, it would be anomalous for Rivera Vega to obtain, through a past immigration infraction, a perpetual right to seek relief at his own convenience. Before IIRIRA, Congress left ajar the door for relief. But Congress closed it on April 1, 1997.

We thus hold that § 1182(a)(9)(C)(i)(II) applies retroactively to unlawful reentries made before April 1, 1997, provided the alien failed to apply for adjustment of status before that date.[4] Because Rivera Vega did not file his application until 2001, his application must be adjudicated under IIRIRA's eligibility criteria. Rivera Vega is thus permanently inadmissible, and he is ineligible for a waiver of inadmissibility on account of his lengthy presence

---

[4] Though not mentioned by either party, the former Immigration and Naturalization Service issued a memo months after IIRIRA went into effect explaining that an alien's "unlawful or attempted unlawful reentry must have occurred on or after April 1, 1997" for § 1182(a)(9)(C)(i)(II) to apply. *See* 74 No. 25 Interpreter Releases at 1035. Notably, the memo offers guidance but does not provide any analysis to support it. The government is not bound by this interpretation because the memo lacks the force of law. *See W. Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996). We also do not defer to the memo's interpretation because this non-binding guidance is "'entitled to respect' . . . only to the extent that [it has] the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). For the reasons stated, we find the memo's analysis— or lack of it—unpersuasive.

in the United States. USCIS correctly denied Rivera Vega's application, and his removal order was properly reinstated.

## II. Rivera Vega's statutory right to counsel in reasonable fear proceedings was not violated.

Rivera Vega next argues that his right to counsel was violated because the IJ conducted his reasonable fear hearing without his counsel present.[5] In the time between when Rivera Vega filed his Opening and Reply Briefs, we held in *Orozco-Lopez v. Garland* that aliens "whose removal orders have been reinstated are statutorily entitled to counsel, at no expense to the government, at their reasonable fear hearings before an IJ." 11 F.4th at 780.[6]

But *Orozco-Lopez* cabined this right to only being notified of the right to counsel and given the opportunity to obtain counsel. We limited that right because 8 C.F.R.

---

[5] Though neither party raised the issue of "exhaustion," we note that Rivera Vega exhausted his right to counsel claim because he complained to the IJ about his counsel's absence. *See Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) ("[E]xhaustion of administrative remedies is a prerequisite to our jurisdiction."); *cf. Brezilien v. Holder*, 569 F.3d 403, 408–09, 412 (9th Cir. 2009) (holding that an alien did not exhaust his right to counsel claim because he failed to complain to the IJ about his counsel's absence).

[6] The government urges us to remand for the IJ to determine in the first instance whether Rivera Vega's right to counsel was violated. We decline to do so because "whether [an] IJ's denial of a continuance violated [an alien's] statutory right to counsel . . . is a question of law which we review de novo." *Id.* at 774 (first alteration in original) (quoting *Montes-Lopez v. Holder*, 694 F.3d 1085, 1088 (9th Cir. 2012)). While an IJ should use its expertise to make initial determinations about factual issues, we may appropriately decide legal issues in the first instance. *See id.* at 779 (deciding whether an alien's right to counsel was violated).

§ 208.31(g)(1) requires that "[i]n the absence of exceptional circumstances," the reasonable fear hearing should be conducted "within 10 days of the filing of the Notice of Referral" with the IJ. *Id.* (alteration in original) (quoting § 208.31(g)(1)). And because of § 208.31(g)(1)'s ten-day deadline, we held that an IJ may conduct the hearing even if the alien is without counsel so long as the alien was "informed of the entitlement to counsel and ha[d] an opportunity to seek counsel within § 208.31(g)(1)'s constraints." *Id.* at 778–79 (holding that an alien's right to counsel was not violated because the asylum officer gave him "a list of free legal service providers" eight days before his reasonable fear hearing).

Rivera Vega's attorney was present during his reasonable fear interview with the asylum officer on June 4, 2019. Thus, Rivera Vega knew of his right to counsel, as he had retained counsel. Rivera Vega also received a notice three days before his reasonable fear hearing explicitly advising him of his right "to be represented in this proceeding, at no expense to the government, by an attorney." And Rivera Vega apparently retained an attorney for the hearing, telling the IJ that "[my attorney] was going to be here." Rivera Vega's attorney failed to appear for reasons unknown based on the record. (Rivera Vega: My attorney "said [the hearing] was going to be at 8:00 but they didn't bring me out until 1:00. So, I don't know if he came or did not."). While Rivera Vega might have a grievance against his counsel, he cannot blame the government for inadequate notice or opportunity to obtain counsel. *See id.* at 778–79. Indeed, the IJ even tried to assist Rivera Vega by checking for a notice of representation or correspondence from his attorney but found none. Considering the impending ten-day deadline, the IJ was not required to take

further remedial actions.  Therefore, Rivera Vega's right to counsel was not violated.[7]

## III.    The past harms Rivera Vega alleged did not rise to the level of torture, so the IJ did not need to explicitly consider "government acquiescence."

Lastly, Rivera Vega claims that the IJ applied an erroneous legal standard in adjudicating his claim for CAT relief.  According to Rivera Vega, the IJ "erroneously require[d] that the feared torturer be a government official" and ignored the possibility of mere "government acquiescence" to torture conducted by a private actor.  But if an alien fails to show a "reasonable possibility" of future torture, 8 C.F.R. § 1208.31(c), then government acquiescence is irrelevant, as there is no torture for the government to give in to.  *See Orozco-Lopez*, 11 F.4th at 780 (rejecting alien's claim that IJ erred by ignoring government acquiescence because "the harms he alleged did not rise to the level of torture").

"Past torture is the first factor we consider in evaluating the likelihood of future torture."  *Nuru v. Gonzales*, 404 F.3d 1207, 1217 (9th Cir. 2005).  The lack of past persecution, a lesser harm than torture, necessarily encompasses a lack of

---

[7] In his Opening Brief, Rivera Vega also argues that he has a right to counsel under the Fifth Amendment's Due Process Clause.  But Congress has provided for "aliens [to] receive a full and fair hearing by providing a statutory right to counsel."  *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007).  That is, Congress has statutorily provided that aliens are entitled to counsel at reasonable fear hearings at no expense to the government.  *See* 8 U.S.C. § 1362; *see also Orozco-Lopez*, 11 F.4th at 777 (holding "that a reasonable fear hearing before an IJ is a type of 'removal proceeding[]' included in § 1362").  That due process entitlement was not infringed here for the reasons outlined above.  Thus, Rivera Vega's due process argument fails.

past torture. *See id.* at 1224. The IJ concluded that Rivera Vega had not even suffered past persecution, let alone torture, because the only time he was harmed in Mexico was when he was assaulted outside a bar in 1976. This finding is supported by substantial evidence. *See Orozco-Lopez*, 11 F.4th at 780 (affirming IJ's conclusion that a single incident of robbery and another incident of kidnapping for ransom did not constitute torture). Therefore, the IJ properly rejected Rivera Vega's CAT claim.

## CONCLUSION

We hold that § 1182(a)(9)(C)(i)(II) retroactively applies to pre-IIRIRA reentries and that USCIS correctly determined that Rivera Vega was statutorily ineligible for adjustment of status. We also hold that Rivera Vega's right to counsel in reasonable fear proceedings was not violated, and that the IJ properly denied Rivera Vega's claim for CAT relief. We thus **DENY** Rivera Vega's petition for review.[8]

---

[8] Rivera Vega also requests that we order ICE to facilitate his return to the United States. Because we deny Rivera Vega's petition for review, we decline to do so. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 936 (9th Cir. 2016) (DHS has "a policy of facilitating the return . . . of removed aliens whose petitions for review are granted." (citing ICE Policy Directive 11061.1 (Feb. 24, 2012), https://www.ice.gov/doclib/f oia/dro_policy_memos/11061.1_current_policy_facilating_return.pdf)).