**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EFRAÍN RAMÍREZ MUÑOZ, | No. 21-70431 |
| *Petitioner,* | Agency No. A022-446-571 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | OPINION |
| *Respondent.* | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 5, 2022
San Francisco, California

Filed June 26, 2023

Before: Jacqueline H. Nguyen and Jennifer Sung, Circuit
Judges, and Joseph F. Bataillon,* District Judge.

Opinion by Judge Nguyen

---

* The Honorable Joseph F. Bataillon, United States District Judge for the
District of Nebraska, sitting by designation.

## SUMMARY[**]

### Immigration

Granting Efraín Ramírez Muñoz's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel concluded that Ramírez's misrepresentations about his citizenship to police officers for the purpose of avoiding removal proceedings did not render him inadmissible and therefore ineligible for adjustment of status under 8 U.S.C. § 1182(a)(6)(C)(ii)(I) for falsely claiming U.S. citizenship "for any purpose or benefit under" federal or state law.

During two arrests for driving under the influence of alcohol, Ramírez falsely presented himself as a U.S. citizen. The BIA found him barred from adjusting status under 8 U.S.C. § 1182(a)(6)(C)(ii)(I), which renders inadmissible "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under . . . Federal or State law." The BIA, relying on *In re Richmond*, 26 I. & N. Dec. 779 (B.I.A. 2016), concluded that § 1182(a)(6)(C)(ii)(I) applied because Ramírez lied about his citizenship "for the purpose of avoiding removal proceedings."

The panel explained that the key question was what it means for a purpose or benefit to be "under" federal or state law. The BIA concluded that this means that a false claim must be made to achieve a purpose or obtain a benefit that is "governed by" federal or state law. The panel concluded

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the BIA's interpretation was untenable, agreeing with the Third Circuit that that its construction was unmoored from the purposes and concerns of the statute.

The panel explained that the BIA's interpretation was incoherent in that it bestowed "under" with two different meanings at once, as if the statute read: "for any purpose *of the alien related to* any law or any benefit *provided by* any law. The panel also concluded that the BIA's interpretation was unreasonably broad, explaining that it encompassed lying about one's citizenship with a purpose of avoiding removal proceedings regardless of whether the lie's recipient had a legal obligation to obtain citizenship information and report suspected undocumented persons to the immigration authorities. Rather, the statute would apply when an individual lies about his citizenship to anyone at all to minimize the risk of being detected by immigration authorities. The panel concluded that the statutory text and legislative history showed that Congress did not intend § 1182(a)(6)(C)(ii)(I) to sweep so broadly; rather, Congress's concern was with individuals who falsely claim citizenship to obtain a legal benefit reserved for citizens or to invoke a law intended for citizens. The panel also observed that *Richmond*'s sweeping restriction on speech would raise serious First Amendment concerns. Thus, the panel declined to afford the BIA's construction of "under" any deference and rejected *Richmond*'s derivative holding that the term "purpose" includes the avoidance of negative legal consequences—including removal proceedings.

Noting that the panel's rejection of the BIA's construction did not free it to forge its own, the panel observed that, in *Diaz-Jimenez v. Sessions*, 902 F.3d 955 (9th Cir. 2018), the court explained that § 1182(a)(6)(C)(ii)(I) uses the word "under" in several

places that consistently reflect the meaning "in accordance with." In the context of § 1182(a)(6)(C)(ii)(I), the panel concluded that the person making a false claim of citizenship must do so for a purpose or benefit in accordance with a law. Thus, for § 1182(a)(6)(C)(ii)(I) to bar admission, the noncitizen must have made the false claim of citizenship to comport with some specific legal requirement. And the noncitizen must have intended to obtain a benefit authorized by or achieve a purpose consistent with the specific law at issue. However, the panel explained that a noncitizen does not act in accordance with the law by attempting to evade it.

As to this case, the panel concluded that Ramírez's misrepresentations about his citizenship to police officers did not trigger § 1182(a)(6)(C)(ii)(I). Joining the Third Circuit, the panel concluded that a false claim of citizenship to the police to minimize the risk that the police would report an arrest to DHS does not satisfy § 1182(a)(6)(C)(ii)(I) because minimizing that risk is not, in and of itself, a legal benefit. Because the BIA failed to identify any statute that Ramírez sought to invoke through his false claims of U.S. citizenship, the panel granted the petition and remanded.

## COUNSEL

Marco A. Jimenez (argued), Jimenez Law Office, Riverside, California, for Petitioner.

Sharon M. Clay (argued), Trial Attorney; Nancy Friedman, Senior Litigation Counsel, Office of Immigration Litigation; Brian Boynton, Assistant Attorney General, Civil Division; United States Department of Justice; Washington, D.C.; for Respondent.

**OPINION**

NGUYEN, Circuit Judge:

Efraín Ramírez Muñoz ("Ramírez"), a native and citizen of Mexico, petitions for review of the denial of his application to adjust his immigration status to lawful permanent resident while in removal proceedings. During two prior arrests for driving under the influence of alcohol, Ramírez falsely presented himself as a U.S. citizen. Based on these incidents, the Board of Immigration Appeals ("BIA") found that Ramírez was barred from adjusting status under 8 U.S.C. § 1182(a)(6)(C)(ii)(I), which renders inadmissible "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under . . . Federal or State law."

We must decide whether Ramírez's conduct—lying to local authorities about U.S. citizenship—was for a "purpose or benefit under" a particular law. The BIA, relying on its *Richmond* decision, concluded that Ramírez lied about his citizenship "for the purpose of avoiding removal proceedings." *See In re Richmond*, 26 I. & N. Dec. 779, 788 (B.I.A. 2016) (holding that a "purpose" under a law "includes the avoidance of negative legal consequences—including removal proceedings"). The BIA's interpretation of § 1182(a)(6)(C)(ii)(I) is untenable. We agree with our sister circuit that "the BIA's construction of the 'purpose or benefit' language [is] . . . 'unmoored from the purposes and concerns' of the statute." *Castro v. Att'y Gen.*, 671 F.3d 356, 370 (3d Cir. 2012) (quoting *Judulang v. Holder*, 565 U.S. 42, 64 (2011)).

A purpose or benefit under a law means a purpose or benefit in accordance with that law. Acting for "any purpose or benefit under" a law precludes acting to evade the law's operation. Because the BIA failed to identify any statute that Ramírez sought to invoke through his false claims of U.S. citizenship, we grant the petition and remand for proceedings consistent with this opinion.

## I.

Ramírez is a native and citizen of Mexico. In 1997, he was admitted to the United States on a six-month nonimmigrant visa and never left. After a couple of years, Ramírez acquired a U.S. birth certificate belonging to David Arthur Vargas, which he used to obtain a driver's license in Vargas's name.

Ramírez twice used Vargas's name when seeking employment—at a cabinet manufacturer in California and a slaughterhouse in Iowa. In addition, at issue here, he used Vargas's name during two arrests for driving under the influence of alcohol.[1]

During his first arrest, in California in 2002, Ramírez used Vargas's name throughout the prosecution because he feared deportation. During his second arrest, in Nebraska in 2011, Ramírez again identified himself as Vargas and presented the corresponding driver's license to local law enforcement. To avoid deportation, Ramírez presented a

---

[1] Ramírez may have used Vargas's name to obtain unemployment assistance payments, as he stated on his application for adjustment of status, though he denied it at the hearing. The agency did not address this discrepancy or rely on Ramírez's receipt of unemployment benefits in its decision.

copy of Vargas's birth certificate and claimed that he was a U.S. citizen.[2]

Although the Nebraska criminal charges were later dismissed, local authorities transferred Ramírez to the custody of Immigration and Customs Enforcement ("ICE") about 15 days after his arrest. While Ramírez was in ICE custody, the Department of Homeland Security ("DHS") commenced removal proceedings, charging Ramírez with overstaying his visa in violation of 8 U.S.C. § 1227(a)(1)(B).

Ramírez sought adjustment of status to lawful permanent resident after one of his sons acquired U.S. citizenship. The immigration judge ("IJ") denied the application, finding that Ramírez made a false claim of U.S. citizenship under 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

Applying *Richmond*, the IJ determined that Ramírez made a false claim of citizenship in two ways—to "avoid the negative legal consequences of removal proceedings" after being arrested and to obtain private employment. The BIA affirmed only the first of these findings.[3]

---

[2] Ramírez denied ever telling the police that he was a U.S. citizen. He testified that the police took his wallet, which contained the copy of Vargas's birth certificate, but never asked him about the document or his citizenship. The agency rejected this explanation, and we lack jurisdiction to review its factual findings. *See Patel v. Garland*, 142 S. Ct. 1614, 1618–19 (2022) (holding that 8 U.S.C. § 1252(a)(2)(B) precludes courts from reviewing any factual findings that underlie the denial of certain discretionary relief, including adjustment of status).

[3] There is no evidence in the record that Ramírez made a false representation of citizenship on an I-9 employment form, as we require when the purpose or benefit at issue is employment. *See Diaz-Jimenez v. Sessions*, 902 F.3d 955, 957 (9th Cir. 2018). Because the BIA did not address the issue, however, we do not review the IJ's finding that

We have jurisdiction to review the BIA's legal conclusions under 8 U.S.C. § 1252(a)(2)(D), and we review them de novo. *See Rivera Vega v. Garland*, 39 F.4th 1146, 1152 (9th Cir. 2022).

## II.

The Immigration and Nationality Act ("INA") provides that "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under [the INA] (including [8 U.S.C. § 1324a]) or any other Federal or State law is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(ii)(I). Stated more succinctly, this provision bars the admission of someone who has falsely claimed U.S. citizenship for any purpose or benefit under federal or state law.

In *Richmond*, the BIA held that the noncitizen must have "the 'subjective intent' to obtain a 'purpose or benefit'" under the law. *Richmond*, 26 I. & N. Dec. at 784. Ramírez concedes that his "subjective intent . . . in both arrest[s] was to avoid being removed from the United States." Such an intent, however, is not "for any purpose or benefit under . . . Federal or State law." 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

## A.

An initial question is what deference, if any, we owe the BIA's *Richmond* decision. In *Diaz-Jimenez*, we interpreted § 1182(a)(6)(C)(ii)(I) without mentioning *Richmond*.

---

Ramírez made a false claim of citizenship to obtain employment. *See Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) ("Where the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." (quoting *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012))).

Normally, however, "[w]e afford *Chevron* deference to published decisions of the BIA that interpret the INA." *Bogle v. Garland*, 21 F.4th 637, 646 (9th Cir. 2021); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Thus, "[i]f Congress has not spoken to the particular issue or the statute is ambiguous, and if the BIA's interpretation is reasonable, we will accept that interpretation, even if it differs from what we believe to be the *best* interpretation." *Bogle*, 21 F.4th at 646.

The key interpretive question here is what it means for a purpose or benefit to be "under" federal or state law. "[W]ords like 'under' . . . can have a variety of meanings," so "[c]ontext is especially important" when interpreting them. *Diaz-Jimenez*, 902 F.3d at 960.

The BIA "interpret[ed] the phrase '*under* [the INA] . . . or any other Federal or State law' . . . to mean that a false claim must be made to achieve a purpose or obtain a benefit that is governed by one of these laws." *Richmond*, 26 I. & N. Dec. at 784 (first omission in original). But "governed by" doesn't entirely make sense in this context. To govern means to control. *See Govern*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/govern. While laws can certainly govern benefits by controlling who gets them, laws cannot similarly "govern" purposes—the Constitution prohibits that. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (recognizing that the First Amendment protects "freedom of thought").

The root of this linguistic awkwardness is the BIA's differential treatment of "purpose" and "benefit." Both words are modified by "under . . . any . . . law," so "under" should relate to them in the same way. *See District of Columbia v. Heller*, 554 U.S. 570, 587 (2008). Yet the

BIA's interpretation looks to the purpose of the *noncitizen* and the benefit of the *law*. The BIA thus bestows "under" with "two different meanings at once," *id.*, as if the statute read: "for any purpose *of the alien related to* any law or any benefit *provided by* any law." That is "incoherent." *Id.* To be consistent with the statutory text, both the "purpose" and the "benefit" must be of the law. The BIA's differential treatment of "purpose" and "benefit" is also unnecessary. The preposition "for" that precedes "any purpose or benefit" already conveys that the noncitizen has a purpose in making the false statement.

Moreover, the BIA's interpretation of "under" is unreasonably broad. In *Richmond*, the BIA acknowledged that to avoid surplusage, § 1182(a)(6)(C)(ii)(I)'s limiting provisions "cannot be read so broadly that [they fail] to exclude anything." 26 I. & N. Dec. at 784–85 (citing *Richmond v. Holder*, 714 F.3d 725, 729 (2d Cir. 2013)); *see Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (explaining that no statutory provision "should needlessly be given an interpretation that causes it . . . to have no consequence" (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012))). Yet the agency's construction produces exactly that result.

In the BIA's view, lying about one's citizenship with a purpose of "avoiding removal proceedings" satisfies § 1182(a)(6)(C)(ii)(I) regardless of whether the lie's recipient has a legal obligation to obtain citizenship information and report suspected undocumented persons to the immigration authorities. *Richmond*, 26 I. & N. Dec. at 789. Under that construction, the statute would apply when an individual lies about his citizenship not just to the police, but to anyone at all, to minimize the risk of being detected by immigration authorities. *See Castro*, 671 F.3d at 368

(observing that "evading detection by immigration authorities" is a purpose that "would apply to virtually any false claim of citizenship made by an individual unlawfully present in the country, since the absence of legal status always provides a reason to wish to avoid the attention of DHS").

Most people have no legal obligation to report suspected violators of immigration laws to the immigration authorities, yet they sometimes do so anyway. The Nebraska police officers here, for example, despite lacking any apparent legal mandate,[4] turned Ramírez over to ICE. A noncitizen seeking to avoid such officiousness might rationally misrepresent himself as a U.S. citizen to all but his closest friends and family. Under the BIA's interpretation, the noncitizen violates § 1182(a)(6)(C)(ii)(I) each time he misrepresents his citizenship to someone he encounters—be it a co-worker, neighbor, or even relative—because his purpose is avoiding removal proceedings.

In *Richmond*, the BIA asserted that its broad interpretation was tempered by an objective materiality requirement: "the [U.S.] citizenship must actually affect or matter to the purpose or benefit sought." 26 I. & N. Dec. at 787. Thus, the BIA reasoned, "not every false claim to United States citizenship will trigger inadmissibility." *Id.* But in practice, the falsely claimed U.S. citizenship will always matter to the noncitizen's purpose of avoiding

---

[4] While the INA permits state and local police officers to verify a detainee's immigration status through consultations with ICE, *see* 8 U.S.C. §§ 1373, 1644; *Arizona v. United States*, 567 U.S. 387, 411–13 (2012), it does not require them to do so, *see United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019). State law, however, may impose such a requirement. *See Arizona*, 567 U.S. at 413.

removal proceedings. The only time the BIA's materiality requirement would not be satisfied is in the theoretical (and exceedingly unlikely) case where a noncitizen mistakenly believes he is removeable and lies about his citizenship to avoid a perceived—but in reality nonexistent—chance of removal.

The statutory text shows that Congress did not intend § 1182(a)(6)(C)(ii)(I) to sweep so broadly. First, as we have explained, the statute's textual structure requires both the "purpose" and the "benefit" to be "under" federal or state law in the same way. Second, Congress could have used far broader terms to define the statute's scope but did not. For example, Congress could have provided that the statute applies to "any purpose *related to* or benefit under" federal or state law, having made similar distinctions in other statutes. *See, e.g.*, *In re Ray*, 624 F.3d 1124, 1133 (9th Cir. 2010) ("[T]he set of cases 'related to' a bankruptcy case is 'much broader' than the set of 'arising under' cases." (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005))). Instead, Congress used the narrower "under" to apply to both "purpose" and "benefit."

Third, Congress flagged one law in particular—8 U.S.C. § 1324a, which limits employment to U.S. citizens in most cases—as having a purpose or benefit that might induce a noncitizen to falsely claim citizenship. That specific reference shows Congress's concern with individuals who falsely claim citizenship to obtain a legal benefit reserved for citizens or to invoke a law intended for citizens (whether characterized as a "benefit" or not). The statute does not address an abstract concern that lying about one's citizenship impairs the orderly functioning of immigration laws.

The legislative history confirms that the BIA's interpretation is unreasonably overbroad. Congress enacted § 1182(a)(6)(C)(ii) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, tit. II, § 344(a), against a backdrop of fear that foreigners were coming to the United States without authorization to seek jobs and public assistance. *See* 142 Cong. Rec. 7300 (1996) (statement of Sen. Edward Kennedy) ("[J]obs are far and away the biggest magnet attracting illegal aliens to the United States . . . We must do more to deny jobs to those who are in the country unlawfully."); 142 Cong. Rec. 5657 (1996) (statement of Rep. Frank Riggs) ("Those in this country without . . . permission . . . take advantage of our public assistance programs."). California voters had recently passed Proposition 187, a measure that sought "to prevent illegal aliens in the United States from receiving benefits or public services in the State." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1300 (9th Cir. 1997). Congress passed IIRIRA to address these concerns at a national level. *See* 142 Cong. Rec. 7547 (1996) (statement of Sen. Alan Simpson) ("We either resolve [immigration reform], or we will have proposition 187's in every State of the Union."); 142 Cong. Rec. 24783 (1996) (statement of Rep. Lamar Smith) ("This bill . . . prevents illegal aliens from taking American jobs, and ends noncitizens' abuse of the welfare system.").

An amendment to the bill that became § 1182(a)(6)(C)(ii) was introduced as a "disincentive for falsely claiming U.S. citizenship." 142 Cong. Rec. 7322 (1996) (statement of Sen. Alan Simpson); *see also* H.R. Rep. No. 104-828, at 199 (1996) (Conf. Rep.) (explaining that IIRIRA would "improve deterrence of illegal immigration to

the United States . . . by reforming exclusion and deportation law and procedures, [and] by improving the verification system for eligibility for employment"). One of the amendment's supporters described it as "mak[ing] it a deportable offense to falsely claim to be a citizen while applying for jobs or welfare benefits." 142 Cong. Rec. 7547 (1996) (statement of Sen. Edward Kennedy); *see also Castro*, 671 F.3d at 368–69 ("The legislative history suggests that Congress intended the bar to apply to false citizenship claims made in conjunction with applications for private employment . . . as well as for public services and benefits.").

*Richmond*'s sweeping restriction on speech would also raise serious First Amendment concerns, as we have observed in a related context. The criminal analogue to § 1182(a)(6)(C)(ii)(I) punishes someone who "falsely and willfully represents himself to be a citizen of the United States." 18 U.S.C. § 911. This language "is sufficiently broad" to criminalize false claims of citizenship "without regard to whether or not the person to whom the false statement is made had good reason to inquire into the [noncitizen's] nationality status." *United States v. Esparza-Ponce*, 193 F.3d 1133, 1137 (9th Cir. 1999) (quoting *Smiley v. United States*, 181 F.2d 505, 507 (9th Cir. 1950)). Because we avoid construing statutes in a way that renders them constitutionally suspect, *see Marquez-Reyes v. Garland*, 36 F.4th 1195, 1204–05 (9th Cir. 2022), we place a limiting construction on the criminal statute: the false claim of citizenship must "be made to a person having some right to inquire or adequate reason for ascertaining [the] defendant's citizenship" and not merely "to stop the prying of some busybody." *Esparza-Ponce*, 193 F.3d at 1137–38 (quoting *United States v. Achtner*, 144 F.2d 49, 52 (2d Cir.

1944)). The BIA's construction of the immigration statute contains no such limitation.

We conclude that *Richmond*'s construction of "under" is unreasonable and do not afford it any deference.[5] Consequently, we reject *Richmond*'s derivative holding that "[t]he term 'purpose' . . . includes the avoidance of negative legal consequences—including removal proceedings." *Richmond*, 26 I. & N. Dec. at 788.

**B.**

Our rejection of the BIA's statutory construction does not free us to forge our own; we have previously interpreted the term "under" in the context of 8 U.S.C. § 1182. In *Diaz-Jimenez*, we explained that the statute "uses the word 'under' in several places" that "consistently reflect the meaning 'in accordance with.'" *Diaz-Jimenez*, 902 F.3d at 960–61 (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 530 (2013)). "To qualify 'under' a statutory provision, the regulated person or act must satisfy the criteria specified by the provision." *Id.* at 961. In the context of § 1182(a)(6)(C)(ii)(I), the person making a false claim of citizenship must do so for a purpose or benefit in accordance with a law.

---

[5] DHS argues that *Richmond*'s interpretation of § 1182(a)(6)(C)(ii)(I) is unreasonable because the statute contains no language that would support a materiality requirement. We need not consider *Richmond*'s materiality requirement, however, because we conclude that Ramírez's subjective intent in making the false claims of citizenship to the police was not for any purpose or benefit under any law. Our disagreement with the BIA's construction of the statute is limited to the word "under." We express no opinion as to the remainder of *Richmond*'s analysis and whether it is a reasonable interpretation of the statutory text.

*Diaz-Jimenez* explained that § 1182(a)(6)(C)(ii)(I)'s application depends on the particular law whose purpose or benefit the noncitizen invokes when making the false claim of citizenship. For example, a noncitizen who presents a fraudulent U.S. birth certificate to a border official to obtain entry into the United States—a legal benefit—thereby violates § 1182(a)(6)(C)(ii)(I). *See Valadez-Munoz v. Holder*, 623 F.3d 1304, 1308–09 (9th Cir. 2010); *see also* 8 U.S.C. § 1185(b) (requiring U.S. citizens to present proper identification to enter the United States). Yet a noncitizen who presents the same birth certificate to a private employer to obtain employment does not violate § 1182(a)(6)(C)(ii)(I) because the relevant law, 8 U.S.C. § 1324a(b)(2), requires that the representation of citizenship "[be] made . . . on a Form I-9." *Diaz-Jimenez*, 902 F.3d at 962.

Thus, for § 1182(a)(6)(C)(ii)(I) to bar admission into the United States, the noncitizen must have made the false claim of citizenship to comport with some specific legal requirement. Any federal or state law requiring U.S. citizenship will do, but not simply "the immigration laws" generally. And the noncitizen must have intended to obtain a benefit authorized by or achieve a purpose consistent with the specific law at issue. But a noncitizen does not act in accordance with the law by attempting to evade it.

## C.

Turning to the facts of this case, we conclude that Ramírez's misrepresentations about his citizenship to California and Nebraska police officers do not bar him from adjusting his status under § 1182(a)(6)(C)(ii)(I). The BIA did not identify any federal or state law under which Ramírez was required to establish his U.S. citizenship status during either arrest.

The BIA concluded that Ramírez was barred only because he lied about his citizenship for the purpose of avoiding removal proceedings.  But we, like the Third Circuit, conclude that a false claim of citizenship to the police "to minimize the risk that the police would report [an] arrest to DHS" does not satisfy § 1182(a)(6)(C)(ii)(I) because "[m]inimizing that risk is not, in and of itself, a legal benefit." *Castro*, 671 F.3d at 370.

DHS argues that *Castro* is distinguishable on its facts because, unlike here, there was no evidence "that the noncitizen mis[led] police officers about his true citizenship in order to minimize the risk that arresting officers would report his unlawful immigration status."  While the Third Circuit criticized the "scant record support" for the BIA's imputing a "purpose of evading detection by immigration authorities," *id.* at 368, the court did not hold that the agency's finding lacked substantial evidence.  Rather, *Castro* held that such a purpose is not disqualifying under § 1182(a)(6)(C)(ii)(I).  *Id.* at 368–71.  Thus, even if the evidentiary support for the purpose is greater here than in *Castro*, that makes no difference.  The problem in both cases is the purpose's legal—not factual—insufficiency.

DHS also contends that *Castro* is distinguishable because in this case, the BIA found evidence that the Nebraska police would report arrestees' citizenship status to DHS.**[6]**  *See Richmond*, 26 I. & N. Dec. at 785 n.6.  But even assuming that the Nebraska police had a reporting policy, misrepresenting one's citizenship status to avoid such a

---

[6] This finding is questionable in that it is it based entirely on the Nebraska police's reporting Ramírez to DHS in this one instance.  Lacking jurisdiction to review the finding, however, we accept it as true.

report—absent a legal requirement to disclose citizenship—does not trigger § 1182(a)(6)(C)(ii)(I)'s application.

We therefore grant the petition for review and remand to the agency to either grant Ramírez's application for adjustment of status or explain, consistent with this opinion, why not.

**PETITION GRANTED; REMANDED.**